956 F.2d 1045
 73 Ed. Law Rep. 37
 Sherryl Snodgrass GOFFER, Plaintiff-Appellee,
v.
Carl Harris MARBURY, individually and in his official
capacity as President of A & M; Leon Frazier, individually
and in his official capacity as Executive Vice President of
A & M; Jay Carrington Chunn, individually and in his
official capacity as Vice President for Academic Affairs and
Research for A & M, Defendants-Appellants.
Franklin Perry, individually and in his official capacity as
Trustee of A & M; Dinsimore G. Robinson, individually and
in his official capacity as Trustee of A & M; Irmatine
Bealyer, individually and in his official capacity as
Trustee of A & M; Thomas Fuller, individually and in his
official capacity as Trustee of A & M; Lucian Blankenship,
individually and in his official capacity as Trustee of A &
M; Chris McNair, individually and in his official capacity
as Trustee of A & M; Elliot Maisel, individually and in his
official capacity as Trustee of A & M; George A. Miller,
individually and in his official capacity as Trustee of A &
M; Wayman Sherrer, individually and in his official
capacity as Trustee of A & M; John Stallworth, individually
and in his official capacity as Trustee of A & M; Oscar D.
Tucker, individually and in his official capacity as Trustee
of A & M; Clifford Walker, individually and in his official
capacity as Trustee of A & M; Guy Hunt, Governor of the
State of Alabama, Defendants.
Sherryl Snodgrass GOFFER, Plaintiff-Appellant, Cross-Appellee,
v.
Carl Harris MARBURY, individually and in his official
capacity as President of A & M; Leon Frazier, individually
and in his official capacity as Executive Vice President of
A & M; Jay Carrington Chunn, individually and in his
official capacity as Vice President for Academic Affairs and
Research for A & M, Franklin Perry, individually and in his
official capacity as Trustee of A & M; Dinsimore G.
Robinson, individually and in his official capacity as
Trustee of A & M; Irmatine Bealyer, individually and in his
official capacity as Trustee of A & M; Thomas Fuller,
individually and in his official capacity as Trustee of A &
M; Chris McNair, individually and in his official capacity
as Trustee of A & M; Lucian Blankenship, individually and
in his official capacity as Trustee of A & M; Elliot
Maisel, individually and in his official capacity as Trustee
of A & M; George A. Miller, individually and in his
official capacity as Trustee of A & M; Wayman Sherrer,
individually and in his official capacity as Trustee of A &
M; John Stallworth, individually and in his official
capacity as Trustee of A & M; Oscar D. Tucker, individually
and in his official capacity as Trustee of A & M; Clifford
Walker, individually and in his official capacity as Trustee
for A & M; Guy Hunt, Governor of the State of Alabama,
Defendants-Appellees Cross-Appellants.
 Nos. 90-7743, 91-7053.
 United States Court of Appeals,
Eleventh Circuit.
 March 27, 1992.
Rehearing Denied June 26, 1992.
 
 Roscoe Roberts, Jr., Huntsville, Ala., R. David Proctor, Sirote & Permutt, Birmingham, Ala., Roderick G. Steakley, Sirote & Permutt, Huntsville, Ala., for defendants-appellants.
 Stuart Edwin Smith, John A. Wilmer, Bell, Richardson & Sparkman, Huntsville, Ala., for plaintiff-appellee.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 GODBOLD, Senior Circuit Judge:
 
 
 1
 This case arose out of alleged wrongful failure of an employer to renew plaintiff's contract of employment, followed a few days thereafter by discharge.
 
 
 2
 Plaintiff, Sherryl Goffer, was employed on the staff of Alabama Agricultural and Mechanical University, a state supported university located in Huntsville, Alabama. She sued Carl Marbury, president of the university; Leon Frazier, executive vice president; Jay Chunn, vice president for academic affairs and research; and several members of the board of trustees. She claimed that her position was abolished and her employment not renewed in violation of a contract, and then she was discharged, all for exercising her First Amendment right of free speech. She claimed that she was stigmatized and defamed by defendants' placing defamatory material in her personnel file and by revealing this material to outsiders. She claimed breach of contract. And she claimed that she was deprived without due process of a property interest in her position. She sought both money damages and equitable relief in the form of reinstatement or front pay.
 
 
 3
 The defendants' position on the First Amendment claim was that plaintiff was discharged for two reasons: her difficulty in working with co-workers made it impossible for her to contribute effectively to the mission of the university, and she violated confidences gained through her position as attorney.
 
 
 4
 The court found that plaintiff did not have an employment contract and directed a verdict in favor of all defendants on the breach of contract and due process claims. It directed a verdict in favor of Chunn on the defamation claim. The court denied defendants' motion for directed verdict in all other respects.
 
 
 5
 The jury returned separate verdicts against Marbury, Frazier and Chunn on the First Amendment and stigmatization claims, and against Marbury and Frazier on the defamation claim, and awarded separate amounts of compensatory and punitive damages against each defendant, totalling $90,000. On the equitable claims, the district court granted relief against the defendant board members consisting of six months front pay (less some partial payments made to plaintiff after her discharge) and directed removal from plaintiff's file of the material found to be defamatory.
 
 
 6
 Defendants' motion for judgment n/o/v was denied. All defendants appeal from the judgment. This case on the merits is No. 90-7743.
 
 
 7
 In case No. 91-7053 the court awarded plaintiff attorney's fees of $68,068.32. Plaintiff appeals and defendants cross-appeal from the fee award.
 
 
 8
 Plaintiff acknowledges that the directed verdict in favor of Chunn on defamation also extinguished her claim against him for stigmatization. Thus before us on appeal are: all individual defendants on the First Amendment issue, Marbury and Frazier on the stigmatization and defamation issues, members of the board of trustees on the issues of equitable relief, and all parties on the attorney's fee issue.
 
 
 9
 We reverse the judgment against Marbury, Frazier and Chunn on the First Amendment claim. The district court erred in applying the balancing test of Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The court treated Goffer's expressions as one unitary incident of speech when in fact Goffer spoke on a number of occasions, over a substantial period of time, on divergent subject matters, to various audiences, and under different circumstances. Also, the court did not give consideration to whether a relationship of attorney-client existed between plaintiff and defendants and, if it did, the effect of that relationship with respect to the First Amendment claim.
 
 
 10
 The same errors carried over into the jury's consideration. The court submitted to the jury the issues of cause for Goffer's discharge, and of Mt. Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), in terms of a single unitary expression of speech by plaintiff. Also the court refused to submit to the jury instructions on the existence and effect of privilege and confidentiality that might arise out of attorney-client relations. Because we reverse on the First Amendment claim we also reverse the equitable relief granted by the court except for the direction to remove defamatory material from plaintiff's file, and we vacate the attorney fees awarded in No. 91-7053.
 
 
 11
 On the defamation and stigmatization claims, we affirm as to Frazier and reverse as to Marbury.
 
 
 12
 Defendants contend that the district court erred: (1) in admitting into evidence matter that fell within the attorney-client relationship; (2) in denying their motions for directed verdict and judgment n/o/v on Goffer's First Amendment claim and defamation and stigmatization claims; (3) in applying the balancing test for employee speech set out in Pickering and Connick; (4) in failing to charge the jury on the existence and effect of attorney-client privilege and confidential relationships between plaintiff and defendants; and (5) in charging the jury on qualified immunity.
 
 
 13
 Goffer became special assistant to the president of A & M in January 1986 by transfer from another position at the university. She had a law degree but had never practiced law and was not a member of the Alabama Bar. In August her position was recharacterized as university counsel, with no change in duties.
 
 
 14
 By letter of September 27 Goffer was notified that her position as university counsel was discontinued, but her employment would be continued to December 31, during which time she would work on a particular project. By letter of October 5 she was terminated.
 
 Plaintiff filed suit alleging:
 
 15
 On various occasions, Goffer made efforts to inform the defendants of wrong-doing and illegal acts harmful to A & M being committed by various persons at the University. University officials refused to accept Goffer's information and recommendations. All of the conduct and speech herein described are, as a matter of law, constitutionally protected by the First Amendment to the United States Constitution.
 
 
 16
 * * * * * *
 
 
 17
 The acts perpetrated upon Goffer by the defendants, in their individual and official capacities, were intended to, and in fact did, punish Goffer for the proper performance of her job duties and exercise of her Freedom of Speech in violation of the Constitution of the United States.
 
 
 18
 The complaint did not identify discrete expressions of speech to which these general allegations referred, as to subject matter, time, place, audience, context, manner of communication, or interests that plaintiff might have in speaking. The pre-trial order paraphrased the general allegations of the complaint, with no further identification of the incidents of speech alleged to enjoy First Amendment protection.
 
 
 19
 Evidence at trial disclosed that over a period of months Goffer engaged in expressions about varying matters that might fall within the general phrase "operation of a university." They embraced such diverse subjects as whether a particular faculty member could be discharged; whether university funds were sought to be paid improperly to legislators; whether a provision proposed to be included in a contract with the football coach was valid; whether the president of the university had improper relationships with two female employees; whether the president pro tem of the board of trustees had engaged in a number of different wrongful acts; whether a vice president of the university had acted improperly in his conduct of a press conference.
 
 
 20
 Not only did the expressions concern different subject matters but they were made to different people in a wide range of circumstances. Goffer had personal interest in some of the incidents, ranging from apparently small to very intense. Motive, though not determinative, is relevant to the public concern inquiry. Breuer v. Hart, 909 F.2d 1035 (7th Cir.1990). Facially, some of Goffer's statements were of serious import to the university, others trivial. Some subject matters she investigated, others not. The factual basis for her separate statements ranged from clearly identified facts to nothing more substantial than rumors. Some statements expanded in the telling and retelling, others not.
 
 
 21
 At the conclusion of plaintiff's case, in a hearing outside the presence of the jury, the court held that Goffer's statements addressed matters of public concern and, applying the balancing test of Pickering, concluded that plaintiff's speech was protected. The court identified most of the incidents of speech by single-phrase descriptions, but it did not analyze or give details of any incident. The court concluded that all the statements addressed matters of public concern because they related to a state institution that spent substantial state funds and served a substantial number of students seeking college education, and the persons involved were officials of the state charged with public duties and responsibilities. The court also found that Goffer brought the matters of which she spoke to appropriate persons and within proper channels. It held that, at least arguably, the persons to whom she spoke were responsible officials to whom evidence of wrongdoing could legitimately be brought.
 
 The Pickering/Connick balancing test
 
 22
 The Supreme Court in Pickering established a case-by-case balancing test aimed at reconciling the conflicting interests of the government as employer in promoting the efficiency of the services it performs through its employees and the interests of the employees as citizens in communicating upon matters of public concern.[1]
 
 
 23
 The Court in Pickering deemed it not appropriate to attempt to lay down a general standard against which all employee statements are to be appraised. 391 U.S. at 569, 88 S.Ct. at 1735. Rather it indicated some of the general lines along which an analysis of the controlling interests should run. Id.
 
 
 24
 Connick refined Pickering and established a multi-stage analysis. At the first stage the court must make a threshold finding on the issue of whether the expression involved a matter of public concern.[2] If the court finds the speech addressed matters of public concern it turns to the second level of analysis in which it weighs the employee's First Amendment interests against the state's interests as employer in promoting the efficiency of the public service the state performs through its employees. Whether the employee's right to speak on a matter of public concern outweighs the government employer's interest in efficiently providing services is a question of law and is subject to de novo review. Connick, 461 U.S. at 150 n. 10, 103 S.Ct. at 1692 n. 10. When close working relationships are essential in fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Id. at 151-52, 103 S.Ct. at 1692-93. In Maples v. Martin, 858 F.2d 1546, 1554 (11th Cir.1988), we noted that comments occurring in the context of a long-standing dispute over internal policies might justify drastic action.
 
 
 25
 Determinations of public concern, and the balancing itself, require ad hoc case-by-case application. The cases are, therefore, not good sources for rules of general application. But they do identify facts that are relevant, and the legal significance of those facts, to be applied in fact-bound situations. Connick spoke of "public concern" in terms of political, social or other concern of the community, i.e., the larger body politic. Id. at 146, 103 S.Ct. at 1689. It indicated that public concern was to be decided by referring to the content, form and context of the speech as revealed by the entire record. A panoply of other indicia have been swept into the public concern inquiry. A highly emphasized factor is whether the speaker is in pursuit of purely private interests. Pickering itself set out several employer interests that are relevant in the second, or balancing, analysis. Many of the cases reexamine in the balancing process the content, form and context rubric set out in Pickering. E.g., Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir.1989).
 
 
 26
 In Maples v. Martin, 858 F.2d 1546, 1552-53 (11th Cir.1988), we addressed the public concern inquiry as applied to speech in the educational setting. We distinguished between critical comments relating to internal administration of college affairs and speech directly affecting the public's perception of the quality of education in the institution.
 
 
 27
 In the case before us the First Amendment issues could not be addressed in the unitary or global fashion employed by the plaintiff and the district court. In Kurtz v. Vickrey, 855 F.2d 723 (11th Cir.1988), we noted the necessity of separating instances of speech in order that the Pickering/ Connick test could be carried out. Kurtz's "speech" consisted of different oral statements, memoranda, and letters published over a period of years. In contrast is Eiland v. Montgomery, 797 F.2d 953, 957 (11th Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987), which was distinguished by the Kurtz opinion. In Eiland we had held that a single expression, consisting of one poem, posted in three locations in the same building on the same day, should be considered as a whole and not divided into different subjects for the purpose of balancing. In Maples members of a university department consistently challenged the way the department was run, reflected in hostile memoranda and personal confrontations. The opinion does not precisely identify the incidents of speech relied on by plaintiff as First Amendment protected, but the decision is directed to a single document.
 
 
 28
 The numerous factors for analysis that are implicated in Goffer's many expressions, in the public concern inquiry, and at the balancing level, could not be met by characterizing the expressions as all relating to possible wrongdoing at a state university and all made to appropriate officials.[3]
 
 
 29
 Attorney-client privilege and confidentiality
 
 
 30
 Issues of confidentiality are central to this case. Defendants asserted throughout that one of the grounds for Goffer's termination was that she violated confidences by speaking of matters that became known to her in her capacity as attorney. This, defendants say, violated the attorney-client privilege, the Alabama Code of Professional Responsibility, and a broader ethical duty imposed on Goffer as attorney to preserve the confidences of her client. Brennan's Inc. v. Brennan's Restaurants, Inc., 590 F.2d 168 (5th Cir.1979).
 
 
 31
 As the trial began the court considered a motion made in limine by defendants that it exclude from evidence all testimony the subject matter of which would fall within the attorney-client privilege. The court denied this "as to anything having to do with this case." On this evidentiary issue, the court denied the motion on the grounds that it was untimely and that privilege had been waived in discovery.[4] But the attorney-client relationship had much to do with the case. Testimony came in concerning who Goffer was attorney for and what she was free to reveal. These issues were fought over in testimony, objections, and in arguments to the jury. But the court gave no consideration to the evidence and did not permit the jury to do so.
 
 
 32
 On appeal defendants say that Goffer violated both the attorney-client privilege and a general duty of confidentiality arising from her role as attorney and that the subject matter of any such violation that was included in an expression by Goffer could not be found to be First Amendment speech. In short, a violation arising out of attorney-client relations would override the First Amendment. We reject this contention. The question then presents itself of whether a violation, if any, was a factor to be considered in the Pickering/ Connick balance. We hold that it was. Whoever of the university and its officials are found to be within the ambit of attorney-client relations have strong (though not overriding) interests in their confidences being protected. The existence or not of attorney-client relations also bears on whether there was present the "close working relationshi[p]" referred to in Connick that gives rise to a "wide degree of deference" to the employer's judgment. Connick, 461 U.S. at 151-52, 103 S.Ct. at 1692. Moreover, definition of Goffer's role with relation to defendants is prerequisite to addressing whether her speech so destroyed her effectiveness in that role that the governmental interest must prevail over her speech interest. See Bryson v. City of Waycross. But the trial court did not consider attorney-client relations as relevant.
 
 
 33
 The question arose again in submission to the jury of the causation and Mt. Healthy issues. In its instructions the court described defendants' defenses, the second of which was that Goffer was discharged because she violated confidences gained only because of her position as attorney for A & M. No instruction was given informing the jury of what could be, and could not be, the "confidences" referred to by defendants. The court gave a Mt. Healthy instruction that referred to defendants attempting to prove that their "proffered legitimate reasons" for the decisions they made about Goffer would have induced them to make the same decisions about the protected conduct. No instruction told the jury whether a breach of confidence could be a "legitimate reason."
 
 
 34
 The defendants requested several instructions on attorney-client relationship and on the Rules of Professional Conduct of the State of Alabama. Not all are correct and some are not artful. But the requests effectively put before the court the position of defendants throughout the trial that the Rules of Professional Conduct, American Bar Association standards, and attorney-client relations were matters that must be considered.[5] The court, proceeding consistently with its position throughout that these matters had nothing to do with the case, denied all the requests. In short, the jury was given no guidance for possible application of the defense that Goffer was discharged because she breached confidences arising out of her position as attorney. This was error.
 
 Stigmatization and Defamation
 
 35
 At the end of October Frazier filled out an exit termination form for Goffer. He described her as "manifestly untruthful, untrustworthy, unethical, subversive and demonstrative of poor judgment." He placed the form in her personnel file and later read the above language to a city employee who called seeking information about Goffer as a possible job applicant. Goffer was not given a "name-clearing" hearing, nor was she aware that this form had been placed in her file.
 
 
 36
 The stigmatizing references to Goffer were published by being placed in her file, Buxton v. Plant City, 871 F.2d 1037, 1040-43 (11th Cir.1989), and by being repeated to the city employee. The evidence was sufficient to submit to the jury on other elements of stigmatization as to Frazier.
 
 
 37
 There is no evidence that Marbury participated in or countenanced the creation of the exit interview form.
 
 
 38
 After Goffer's termination Marbury told a local representative of the NAACP that the university had let Goffer go. There is no evidence that he provided the representative with the particulars nor that he shared with him the contents of the exit interview form. Therefore, as to Marbury, a directed verdict should have been given.
 
 
 39
 The court considered Goffer to be a limited public figure. Therefore it gave a jury instruction that a statement must have been made with actual malice or reckless disregard of whether the statement was false or not. The parties differ on whether our review is under the usual sufficiency of evidence rule or by independent constitutional review. Under either standard we find no basis on which to reverse.
 
 
 40
 Frazier's reading of his entry to the city employee deprived Goffer of her right to know of the charges and to respond to them. His subjective belief about the correctness of the entry was not relevant in determining whether he enjoyed qualified immunity. Herron v. Bowyer, 850 F.2d 1543, 1546 (11th Cir.1988). He was not harmed by the court's denial of his requested instruction that would have given effect to good faith since the instruction actually given did require good faith. This was more favorable than he was entitled to.
 
 
 41
 REVERSED in part, VACATED in part, AFFIRMED in part and REMANDED.
 
 
 
 [1]
 The Pickering line of cases protects against not only discharge but also any adverse employment action taken by the employer that is likely to chill the exercise of constitutionally protected speech. McGill v. Bd. of Education, 602 F.2d 774, 780 (7th Cir.1979). E.g., refusal to hire, demotion, reprimand, refusal to promote
 
 
 [2]
 Also, there must be an initial determination of whether the spokesperson has spoken in his or her role as an employee or as citizen. Kurtz v. Vickrey, 855 F.2d 723 (11th Cir.1988). It is not disputed that Goffer spoke as an employee
 
 
 [3]
 It would be inappropriate for us to attempt to list the factors appropriate for the necessary case-by-case analysis of this case. We note, however, that the general context of an expression must be considered. When Goffer spoke the university was in a very difficult period. Morale was low. It was going through the selection process and the first months in office of a new administration, a president and two vice presidents. The president was ill part of the time. The university was enmeshed in a scandal over changing of students' grades for pay. It was involved in a lawsuit over composition of its board of trustees. Also, it was relevant as part of the context (and relevant to the attorney-client issue discussed below) that over much of the period during which Goffer was speaking she was surreptitiously tape-recording her conversations with officials of the university without their knowledge or consent
 Goffer's interests in speaking also must be included in the assay. Her interests varied, but some of her later expressions were acknowledged by her to be directed at saving her job, which was in jeopardy.
 Consideration also should be given to whether Goffer's speech, if on a matter of public concern, so severely impeded her effectiveness that the governmental interest at stake must outweigh her speech interest. Bryson v. City of Waycross, supra.
 
 
 [4]
 This ruling did not reach the effect that would be given to attorney-client matters once admitted as evidence
 
 
 [5]
 For example, Rule 1.13 of the Alabama Rules of Professional Conduct describes the role of the organization lawyer in his responsibilities owed to the organization and to the officers, directors and employees of the organization. This rule implicates such matters as identifying what entity or entities Goffer was attorney for, what matters were confidential, and to whom they might be revealed