**Ellen D. McCABE, Plaintiff–Appellant,**

**v.**

**C.E. SHARRETT, Jr., Chief of Police, City of Plantation, Florida, City of Plantation, a municipal corporation of the State of Florida, Defendants–Appellees.**

No. 92–4582.

United States Court of Appeals,
Eleventh Circuit.

Feb. 7, 1994.

Arthur M. Wolff, Ft. Lauderdale, FL, for plaintiff-appellant.

Michael R. Piper, Johnson, Anselmo, Murdoch, Burke & George, P.A., Ft. Lauderdale, FL, for defendants-appellees.

Before ANDERSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Ellen McCabe brought this suit against the City of Plantation, Florida (the "City") and Plantation's police chief, C.E. Sharrett, Jr., under 42 U.S.C. § 1983. She claims that defendants have violated her constitutional right to freedom of association by transferring her from her job as secretary to the police chief to a less desirable job on account of her marriage to a Plantation police officer, Joel McCabe.[1] The district court granted defendants' motion for final summary judgment and denied McCabe's motion for partial summary judgment, and McCabe now appeals. For the following reasons, we affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

In March 1982, plaintiff-appellant Ellen McCabe (then Ellen Belmont) assumed the position of secretary to the City of Plantation chief of police. The police chief at that time was Morris Meek. In July 1985, appellant married Joel McCabe, a Plantation police officer who is currently a sergeant assigned to the Field Operations Bureau. In July

---

1. To avoid confusion, we will refer to Ellen McCabe as "McCabe" and to Joel McCabe as "Joel McCabe."

1990, Police Chief Meek retired and appellee Sharrett was appointed as his replacement. Ellen McCabe remained as secretary to Police Chief Sharrett until August 7, 1990, when she was transferred to a Clerk Typist position in the Plantation Parks and Recreation Department. McCabe claims that her job transfer constitutes a demotion because her salary is frozen, she is ineligible for a raise for approximately four and one-half years, and her new position involves less responsibility and more menial tasks than her old job. While defendants-appellees deny that McCabe was demoted, they do concede on appeal that for purposes of constitutional analysis she has suffered adverse employment action. Appellees also do not deny McCabe's assertion that she was transferred because she is married to Joel McCabe. Appellee Sharrett asserts that he transferred McCabe because he feared that her marriage would undermine her loyalty to him and her ability to maintain the confidentiality of his office. *See* R1–23–4 (Affidavit of Plantation Police Chief C.E. Sharrett, Jr.).

On September 19, 1990, Ellen McCabe sued Chief Sharrett and the City of Plantation under 42 U.S.C. § 1983, claiming that they had violated her right to freedom of association by transferring her because of her marriage to Joel McCabe. McCabe moved for partial summary judgment and defendants moved for final summary judgment; both motions were referred to a magistrate judge. The magistrate judge recommended that the district court grant McCabe's motion for partial summary judgment and deny defendants' motion for final summary judgment. *See* R1–41 (Report of Magistrate Judge Linnea Johnson). The district court, while adopting part of the magistrate judge's report, disagreed with the magistrate judge's recommendation, and granted final summary judgment to Chief Sharrett and the City. *See* R1–60 (Opinion of District Judge Shelby Highsmith). McCabe now appeals.

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the

## II. SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks and citations omitted).

## III. STANDARD OF REVIEW

We review grants of summary judgment de novo, applying the same legal standard the district court used. *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir. 1990). When reviewing a grant of summary judgment, we may affirm on any adequate ground, regardless of whether the district court relied on that ground. *Davis v. Liberty Mutual Ins. Co.*, 525 F.2d 1204, 1207 (5th Cir.1976)[2]; 10 C. Wright et al., *Federal Practice & Procedure* § 2716, at 658 (2nd ed. 1983).

## IV. DISCUSSION

A. McCabe's Claim

McCabe asserts that, by transferring her to the Parks and Recreation Clerk Typist position because of her marriage to Joel McCabe, appellees have infringed her constitutional right to freedom of association. In essence, she argues that appellees have placed an unconstitutional condition on her retaining her position as secretary to the police chief; her claim is that appellees would allow her to keep her job as secretary to Chief Sharrett only on the condition that she relinquish her freedom of association right to be married to Joel McCabe, and that this condition is unjustifiable.

former Fifth Circuit handed down prior to October 1, 1981.

## B. The District Court's Decision

The district court concluded that the right McCabe asserts, the right to be married, is a constitutionally protected freedom of association right. *See* R1–60–7 (District Court Opinion). The district court also determined that McCabe's transfer constituted an adverse employment action and that she would not have been transferred were she not married to Joel McCabe. *Id.* The district court concluded, however, that McCabe's transfer was justified and that it therefore did not infringe her right to be married. To determine whether McCabe's transfer was justified, the district court employed the balancing test articulated in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under *Pickering,* the permissibility of adverse employment action taken against a public employee because of the employee's exercise of a constitutional right is determined by weighing the employee's interest in exercising the right against the government's interest in "promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35. The district court concluded that, in light of "a police chief's need for effective management of the police department, which requires, *inter alia,* tight control over sensitive information," Chief Sharrett's concern about "the potential breach of confidentiality ... inherent in having a subordinate's wife as his secretary" outweighed McCabe's interest in exercising her association right to be married. R1–60–10 (District Court Opinion). Therefore, the district court granted summary judgment to appellees and denied it to McCabe.

## C. Parties' Arguments on Appeal

McCabe contends that the district court erred in granting summary judgment to appellees instead of to her. Of course, she does not contest the district court's conclusion that her right to be married is constitutionally protected nor its determination that appellees demoted her solely because of her marriage to Joel McCabe. However, she argues that the district court should not have applied the *Pickering* analysis to determine whether her transfer was permissible. She

contends that once the district court found that the right to be married was constitutionally protected and that she would not have been transferred were she not married to Joel McCabe, she was entitled to prevail. *See* Appellant's Brief at 10–17. In other words, she appears to believe that the district court should not have considered whether some governmental interest justified her transfer. Furthermore, even if the district court properly applied the *Pickering* test, she argues, it should have concluded that the balance weighs in her favor because there were no reasonable grounds to believe that her marriage to Joel McCabe had ever interfered with or would interfere with the effective functioning of Chief Sharrett's office. *Id.* at 17–24.

Unlike McCabe, appellees believe that the district court properly ruled in their favor. They do not take issue with the district court's conclusion that McCabe's right to be married is a constitutionally protected freedom of association right. *See, e.g.,* Appellees' Brief at 8. Nor do they contest either the district court's determination that McCabe suffered adverse employment action or the district court's finding that McCabe would not have been transferred were she not married to Joel McCabe. *See id.* at 15. Appellees do agree with McCabe that the district court should not have applied the *Pickering* analysis to McCabe's claim. They argue that instead of the *Pickering* test, the district court should have employed the analysis set forth in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), to determine whether appellees' transferring McCabe was justified. Those cases, appellees claim, stand for the proposition "that where a public employee occupies a position of confidence to a policymaker and concerns over divided loyalties exist, the policymaker may remove the employee from that position without violating the employee's [constitutional] rights." Appellees' Brief at 11. According to appellees, because McCabe was a confidential employee and Chief Sharrett was concerned about her loyalty to him, his firing her was permissible under the *Elrod–Branti* analysis. *Id.* at 12–16. However, to the extent that the district

court properly concluded that *Pickering* applies on the issue of justification, appellees argue, it properly found the *Pickering* balance to tip in their favor. *Id.* at 12–16.

D. Legal Standards Governing Whether Adverse Employment Action Infringes Public Employee's Freedom of Association Right To Be Married

To determine whether the district court properly granted summary judgment to appellees and denied summary judgment to McCabe, we must first consider the legal standards applicable to McCabe's claim, for they determine both which facts are material, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Four Parcels of Real Property,* 941 F.2d at 1437, and which party is entitled to prevail, should there be no genuine issue of material fact.

■ McCabe's claim is that appellees have impermissibly burdened her freedom of association right to be married to Joel McCabe by conditioning her secretary job on her not exercising that right. Obviously the government burdens a constitutional right when it imposes a direct penalty such as a criminal fine on its exercise. However, the government may impose a similar burden if it conditions the receipt of a government benefit on the relinquishment of the constitutional right. Imposing such a condition is viewed as burdening the right because it deters exercising the right to the same extent as a direct penalty, *see Speiser v. Randall,* 357 U.S. 513, 518–19, 78 S.Ct. 1332, 1338, 2 L.Ed.2d 1460 (1958) (denial of tax exemption to citizens unwilling to sign loyalty oath burdens right to free speech because deters exercise of speech right as much as fine would); *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136, 140–41, 107 S.Ct. 1046, 1048–49, 94 L.Ed.2d 190 (1987) (denying unemployment benefits to Seventh–Day Adventist unemployed because unwilling to work on Saturday, her Sabbath, burdens right to free exercise of religion because deters exercise of right as much as fine would) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963), and *Thomas v. Review Bd. of the Ind. Unemployment*

*Sec. Div.,* 450 U.S. 707, 717–18, 101 S.Ct. 1425, 1431–32, 67 L.Ed.2d 624 (1981)); thus, when a condition on a government benefit burdens a constitutional right, it generally triggers the same scrutiny as a direct penalty would. *See, e.g., Hobbie,* 480 U.S. at 141–42, 107 S.Ct. at 1049. It is well established that a job such as McCabe's is a type of government benefit the enjoyment of which may not be conditioned on the employee's relinquishing a constitutional right absent substantial government justification. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Stough v. Gallagher,* 967 F.2d 1523, 1527 (11th Cir. 1992).

■ In order for a public employee to establish that an employer conditioned his or her job in a way that burdened impermissibly a constitutional right, the employee must first demonstrate that the asserted right is protected by the Constitution and that he or she suffered "adverse employment action" for exercising the right. *See, e.g., Goffer v. Marbury,* 956 F.2d 1045, 1049 & n. 1 (11th Cir.1992). Upon making these two showings, the employee is entitled to prevail if the adverse employment action was taken in such a way as to infringe the constitutionally protected right. *See generally Branti,* 445 U.S. 507, 100 S.Ct. 1287; *Rankin,* 483 U.S. 378, 107 S.Ct. 2891.

1. Demonstrating Constitutional Protection for Asserted Right

■ For a public employee to establish that an adverse employment action has infringed a constitutional right, the employee must first demonstrate that the asserted right is protected by the Constitution. In this case, the right that McCabe alleges has been impermissibly burdened is her right to association with her husband, Joel McCabe.

■ According to Supreme Court precedent, the United States Constitution accords special protection to two different forms of association, "intimate association" and "ex-

pressive association." *See Roberts v. United States Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984); *City of Dallas v. Stanglin,* 490 U.S. 19, 23–25, 109 S.Ct. 1591, 1594–95, 104 L.Ed.2d 18 (1989). *Roberts* teaches that the right of intimate association—the freedom to choose to enter into and maintain certain intimate human relationships—is protected from undue governmental intrusion as a fundamental aspect of personal liberty. *Roberts,* 468 U.S. at 617–20, 104 S.Ct. at 3249–51. At a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. *Id.* at 619, 104 S.Ct. at 3250. Whether the right extends to other relationships depends on the extent to which those attachments share the qualities distinctive to family relationships, such as "relative smallness" and "seclusion from others in critical aspects of the relationship." *Id.* at 620, 104 S.Ct. at 3250. The right of expressive association—the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion—is protected by the First Amendment as a necessary corollary of the rights that the amendment protects by its terms. *Id.* at 617–18, 622, 104 S.Ct. at 3249, 3252. Both the intimate and the expressive association rights are considered fundamental. *See, e.g., id.* at 617–19, 622–29, 104 S.Ct. at 3249–50, 3252–55; *Hatcher v. Board of Public Education,* 809 F.2d 1546, 1558 (11th Cir.1987). Therefore, a plaintiff like McCabe can obtain special protection for an asserted associational right if she can demonstrate either that the asserted association closely enough resembles a family relationship to be protected by the right to intimate association, or that the purpose of the association is to engage in activities independently protected by the First Amendment.

Appellees do not contest the district court's conclusion that McCabe's asserted right, the right to be married, is a freedom of association right entitled to special constitutional protection. *See, e.g.,* Appellees' Brief at 8. To argue otherwise would be unreasonable, since *Roberts* explicitly states that the right to be married falls within the scope of the constitutional right of intimate association. *See Roberts* at 619, 104 S.Ct. at 3250. Moreover, it is well established that the right to marriage, like other intimate association rights, is fundamental. *Zablocki v. Redhail,* 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967).

■ Of course, a single association may possess both intimate and expressive features and therefore fall within the scope of not only the right of intimate association but also the right to expressive association. *See Roberts* at 618, 104 S.Ct. at 3249 ("[t]he [intimate and expressive] features of constitutionally protected association may, of course, coincide."); *IDK, Inc. v. Clark County,* 836 F.2d 1185, 1193 (9th Cir.1988) (citing *Roberts*); Kenneth L. Karst, *The Freedom of Intimate Association,* 89 Yale L.J. 624, 654 (1980). However, in her complaint McCabe deems the allegedly infringed right the "right of intimate association," *see* R1–1–5 (Complaint), and does not claim that appellees have burdened her right to associate with her husband for the purpose of engaging in First Amendment activities, *see* R1–1 (Complaint). Therefore, we view this case as implicating only the right to intimate association.

### 2. Demonstrating Adverse Employment Action

■ For a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered some sort of adverse employment action for exercising the right. "Adverse employment action" is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands. *See Goffer,* 956 F.2d at 1049 n. 1; *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

McCabe has produced evidence that the job to which she has been transferred, a Clerk Typist II position, is two pay grades lower than her secretary position. See R1–51–30, 71 (Deposition of Ellen McCabe). She has also produced evidence that, although her salary has not decreased, her eligibility for salary increases is less in her new position than in her former job, see id. at 31, 33–34, 60, and that her new position involves less responsibility and more menial tasks than her old job, see R1–9–6 (Affidavit of Ellen McCabe). Appellees have produced no evidence to contradict these facts. Moreover, at oral argument appellees did not contest the district court's determination that McCabe's transfer constituted an "adverse employment action." The evidence also demonstrates, and appellees do not contest, that McCabe was demoted solely because she exercised her right to be married to Joel McCabe. See R1–23–4 (Affidavit of Plantation Police Chief C.E. Sharrett, Jr.) (concession by Chief Sharrett that he transferred McCabe solely because of her marriage); Appellees' Brief at 15.

3. Determining Whether Adverse Employment Action Infringes Public Employee's Constitutional Right To Be Married

Since McCabe has established that her asserted right is a fundamental constitutional right and that she suffered adverse employment action solely because she exercised that right, the question for us to determine is whether the adverse employment action was taken in such a way as to infringe her asserted right. The Supreme Court has never specifically addressed the issue of what legal analysis governs the question of whether an adverse employment action infringes a public employee's fundamental right to be married. Thus, while there are several distinct analytical schemes that courts have applied in situations analogous to this one, it is not entirely clear which analysis should apply to this case. Specifically, we believe that there exist three potential analyses: the *Pickering* analysis, the *Elrod–Branti* analysis, and general strict scrutiny. As it turns out, we need not decide which of these analyses applies because we conclude that defendants are entitled to prevail regardless of which scheme we employ. However, to help explain why appellees are entitled to prevail under any of the possible analyses, we describe below each of the three schemes.

### a. Pickering *Analysis*

In cases where a public employee has suffered adverse employment action in retaliation for exercising the right to free speech, the Supreme Court has evaluated the constitutionality of the action by applying a balancing test first enunciated in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[3] The *Pickering* test requires balancing "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."[4] *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35. The Supreme Court has described such balancing as necessary "to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment." *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897. According to this theory, allowing unchecked public employee expression would be inappropriate because some expression might hinder the performance of public functions, but giving public employers free rein to silence discourse would also be unacceptable for it would allow employers to censor employee speech because they disagree

---

**3.** Before applying the balancing test, a court must make the threshold determinations (1) that the public employee has suffered adverse employment action and (2) that the public employee's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983); *Eiland v. City of Montgomery,* 797 F.2d 953, 956–57 n. 4

(11th Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

**4.** The Court has described the state interest element of the test as focusing on "the effective functioning of the public employer's enterprise." *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899.

with its content rather than because it disrupts workplace functioning. *Id.*[5]

#### b. Elrod–Branti *Analysis*

The Supreme Court has also devised a special analytical scheme for cases where a public employee has suffered adverse employment action solely because of affiliation with a certain political party. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Court considered the permissibility of conditioning the retention of public employment on an employee's support of the employer's political party. The Court held that political patronage firings burden public employees' First Amendment rights to freedom of belief and association, and that such firings must survive "exacting scrutiny"; in other words, there must be no less restrictive way to achieve a "vital government end." *Elrod,* 427 U.S. at 359, 363, 96 S.Ct. at 2683, 2685 (plurality opinion). The Court held that governments have a vital interest in ensuring that "representative government not be undercut by tactics obstructing the implementation .of policies of the new administration," 427 U.S. at 367, 96 S.Ct. at 2687 (plurality opinion), but that as a matter of law only the firings of employees in "policymaking positions" serve this interest sufficiently closely. *Id.* at 372, 96 S.Ct. at 2689. In *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Court clarified the analysis for determining the constitutionality of political patronage dismissals, holding that such dismissals are justifiable only when "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.[6] Thus, in contrast to *Pickering* with its case-by-case balancing test, *Elrod* and *Branti* create a categorical approach[7] for determining the constitutional justifiability of adverse employment actions taken for political patronage reasons: look to whether party affiliation is important to effective performance of the job at issue.[8]

---

**5.** In cases where the employer denies taking the adverse employment action solely because of the public employee's exercise of speech rights, courts perform the causation analysis first articulated in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). First, courts require that the employee, in order to prevail, prove that the speech at issue was a "substantial factor" in the government's decision to demote or discharge the employee. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. Even if the employee meets the "substantial factor" burden, and even if the challenged action would be otherwise impermissible, the government will nonetheless prevail if it can show that "it would have reached the same decision ... even in the absence of the protected conduct." *Id.* We need not address the applicability of the *Mt. Healthy* analysis in this case because appellees admit that they would not have transferred McCabe were she not married to Joel McCabe. *See* Appellees' Brief at 15.

**6.** In *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court extended *Elrod* and *Branti* to other adverse employment actions besides firing, such as hirings, transfers, promotions, and recalls from layoffs.

**7.** *See* Craig D. Singer, Comment, *Conduct and Belief: Public Employees' First Amendment Rights to Free Expression and Political Affiliation,* 59 U.Chi.L.Rev. 897, 897–904 (1992) (describing ad hoc *Pickering* balance and categorical *Elrod–Branti* analysis); James Kimmell, Jr., Note, *Poli-*

*tics and the Non–Civil Service Public Employee: A Categorical Approach to First Amendment Protection,* 85 Colum.L.Rev. 558, 559–63 (1985) (explaining difference between ad hoc and categorical approaches).

**8.** Of course, the plaintiff must make threshold showings (1) that the behavior at issue consists of constitutionally protected political affiliation or belief and (2) that he or she actually suffered adverse employment action before a court will consider the issue of justification. Furthermore, in cases where the employer denies taking the adverse employment action solely because the employee exercised the expressive association right of political affiliation, we also employ the *Mt. Healthy* causation analysis. In other words, we require the plaintiff to demonstrate that political affiliation was a substantial or motivating factor for the challenged action in order to recover, and we allow the employer to prevail even if the plaintiff meets the substantial factor burden and even if the challenged action would be otherwise impermissible if the employer can show that the action would have been taken even absent the employee's protected conduct. *See, e.g., Tanner v. McCall,* 625 F.2d 1183, 1193, 1195 (5th Cir.1980); *accord Acevedo–Diaz v. Aponte et al.,* 1 F.3d 62, 66 (1st Cir.1993); *Barnes v. Bosley,* 745 F.2d 501, 507 (8th Cir.1984). As we have mentioned, we need not address the applicability of the *Mt. Healthy* analysis here because appellees admit that they would not have transferred McCabe were she not married to Joel McCabe. *See supra* Section IV.D.3.a.; Appellees' Brief at 15.

### c. Strict Scrutiny Analysis

Generally speaking, when a government action or regulation burdens fundamental constitutional rights, the action or regulation is subjected to strict scrutiny and is therefore deemed to infringe those rights unless shown to be narrowly tailored to serve a compelling government interest. *See, e.g., Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 666, 110 S.Ct. 1391, 1401, 108 L.Ed.2d 652 (1990); *Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). As discussed, the right to marriage, like other intimate association rights, has been deemed fundamental. *See supra* Section IV.D.1. Therefore, burdens on the right to marry, like burdens on other intimate association rights, are generally subjected to strict scrutiny. *See Zablocki,* 434 U.S. at 382, 98 S.Ct. at 679 (significant burden on right to marry subjected to "critical examination") (citations omitted); *Hatcher,* 809 F.2d at 1558 (state actions curtailing freedom of association subject to closest scrutiny) (quoting *NAACP v. Alabama,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958)).

As the public employee expression and political patronage cases demonstrate, the Court has sometimes devised special analyses for cases involving burdens on public employees' constitutional rights. Nonetheless, in some situations courts have applied the generally applicable strict scrutiny test, rather than one of the special public employee analyses, to employee claims that public employer actions have infringed their fundamental constitutional rights. For example, in *Clark v. Library of Congress,* 750 F.2d 89 (D.C.Cir.1984), a Library of Congress book reshelver challenged his employer's subjecting him to an intensive FBI investigation on account of his affiliation with a political group, the Young Socialist Alliance. After determining that this action burdened the plaintiff's fundamental expressive association rights to political belief and affiliation, the court concluded that the action could not be justified unless it was necessary to serve a compelling government interest. *Clark,* 750 F.2d at 94. While the court cited *Elrod* for the proposition that public employer burdens on employee rights of belief and affiliation are subject to strict scrutiny, it did not apply the *Elrod–Branti* categorical test for determining whether strict scrutiny was met—i.e. the test that asks whether a particular political affiliation or lack thereof is an appropriate requirement for effective performance of the public office involved.

As did the *Clark* court in analyzing a burden on the expressive association right, some courts have suggested that the generally applicable strict scrutiny test should be applied in determining justification for burdens on public employees' intimate association rights. *See, e.g., Dike v. School Bd.,* 650 F.2d 783, 787 (5th Cir. Unit B July 1981) (suggesting that public school board refusal to allow teacher to breastfeed her child during lunch hour could be justified only by showing school policy was "closely tailored" to "sufficiently important state interests," and citing cases holding that burdens on fundamental rights are subject to strict scrutiny); *Thorne v. City of El Segundo,* 726 F.2d 459, 469–70 (9th Cir.1983) (holding that police department inquiry burdening employment applicant's privacy and free association rights must be evaluated under "heightened scrutiny" and thus be "narrowly tailored" to police department's "legitimate interests"), *cert. denied,* 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984); *Whisenhunt v. Spradlin,* 464 U.S. 965, 971–72, 104 S.Ct. 404, 409, 78 L.Ed.2d 345 (1983) (Brennan, Marshall, and Blackmun, JJ., dissenting from denial of certiorari) (suggesting that adverse employment action on account of police officers' off-duty sexual conduct burdened fundamental constitutional rights and could be justified only if "necessary to achieve strong, clearly articulated state interests.").[9]

---

9. Of course, before the burden shifts to the public employer to demonstrate that the challenged action is justified under strict scrutiny, the plaintiff must make threshold showings (1) that the activity at issue is protected as a fundamental constitutional right and (2) that he or she suffered adverse employment action for exercising the right. We need not address whether, in cases where the employer disputes taking the challenged action solely because of the protected conduct, the *Mt. Healthy* analysis should be applied before applying strict scrutiny, since as

## d. Determining Proper Analysis for Evaluating Whether Adverse Employment Action Infringes Public Employee's Intimate Association Right To Be Married

As mentioned above, the Supreme Court has never specifically explained what legal analysis governs the issue of whether an adverse employment action infringes a public employee's right to be married; thus, it is not entirely clear which analysis—general strict scrutiny, *Pickering*, or *Elrod–Branti*—governs this case. We might follow those courts that have applied general strict scrutiny analysis to cases involving public employees' political affiliation and intimate association rights. On the other hand, to the extent it seems appropriate to apply strict scrutiny to McCabe's intimate association claim, it might also seem fitting to look to *Elrod* and *Branti*, themselves strict scrutiny cases, for guidance in applying strict scrutiny to a case involving a public employee's exercise of association rights. *Elrod* and *Branti*'s concern that employees exercising their constitutional rights not hinder the "effective performance of the public office involved," *see Branti*, 445 U.S. at 518, 100 S.Ct. at 1295, would seem as applicable when employees exercise intimate association rights as when they exercise the political affiliation rights at stake in *Elrod* and *Branti*. Furthermore, to the extent that *Pickering* and *Elrod–Branti* are seen as more deferential to the public employer than general strict scrutiny, it would seem odd to defer when fundamental speech or political affiliation rights are involved but not when intimate association rights are at stake.

Even if we rule out general strict scrutiny and assume that either the *Pickering* or the *Elrod–Branti* analysis applies, it is not clear which analysis is better suited to a situation involving intimate association. Appellees strongly urge that we apply the *Elrod–Branti* analysis to this case. They point out that *Elrod* and *Branti* explicitly address the right to freedom of association, whereas the *Pickering* analysis was developed in the free speech context. They concede that *Elrod*

and *Branti* address the expressive association right rather than the intimate association right, but argue that *Elrod* and *Branti* stand for a general principle applicable regardless of the nature of the association right at stake: "that where a public employee occupies a position of confidence to a policymaker and concerns over divided loyalties exist, the policymaker may remove the employee from that position without violating the employee's [constitutional] rights." Appellees' Brief at 8–11.

We agree with appellees that there is some justification for applying the *Elrod–Branti* rather than the *Pickering* analysis in this case. *Elrod* and *Branti* focus on a public employee's right to harbor certain political beliefs and on how exercising that right affects the performance of governmental functions by affecting employee loyalty. *See Terry v. Cook*, 866 F.2d 373, 376–77 (11th Cir. 1989) (suggesting *Elrod–Branti* concern is how employee political beliefs affect loyalty and thereby job performance); Singer, Comment, *Conduct and Belief*, at 917–18 (suggesting that political patronage cases focus on belief and its effect on loyalty). In other words, *Elrod* and *Branti* focus on belief, not on conduct. *Pickering*, on the other hand, focuses on the disruptive potential of expressive conduct rather than on the disruptive potential of belief. *See Stough v. Gallagher*, 967 F.2d 1523, 1527 (11th Cir.1992) (suggesting that *Pickering* focuses on problem of "overt expressive conduct" by public employees); *Terry*, 866 F.2d at 376–77 (*Pickering* and its progeny focus on expressive conduct, not on mindset of possessing allegiance to employer); Singer, Comment, *Conduct and Belief*, at 917–18 (*Pickering* concern is expressive conduct and its effect on workplace efficiency, not political belief and its effect on government functioning).

In this case, appellees do not argue that McCabe has engaged in overt expressive conduct that has disrupted the workplace; rather, their concern is that her marital status will inhibit the proper functioning of the chief's office by compromising her loyalty to

discussed appellees concede that they transferred McCabe solely because of her marriage to Joel

McCabe.

the police chief. To the extent that the status of being married is more closely analogous to belief than to conduct, the *Elrod–Branti* analysis and its focus on belief may be better tailored to this case than the *Pickering* analysis. Indeed, the facts of this case are strikingly similar to those of several cases where courts have applied the *Elrod–Branti* analysis. For example, in *Soderstrum v. Town of Grand Isle*, 925 F.2d 135 (5th Cir.1991), the Fifth Circuit applied the *Elrod–Branti* analysis to evaluate the plaintiff's claim that she was fired from her job as secretary to the chief of police in violation of her freedom of association rights. After the plaintiff's employer lost his bid for reelection, the new police chief fired the plaintiff because her ties to the old police chief made him doubt her loyalty. *See also Faughender v. City of North Olmsted*, 927 F.2d 909 (6th Cir.1991) (applying *Elrod–Branti* analysis to claim by former secretary to mayor that newly elected mayor fired her because of her support for old mayor); *Soderbeck v. Burnett County*, 752 F.2d 285 (7th Cir.) (applying *Elrod–Branti* to case where sheriff's office employee was fired by new sheriff after old sheriff, the employee's husband, lost his election race against new sheriff), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). Although the association at issue in the latter cases is expressive and not intimate as in this case, in each of the latter cases, as in this case, the employee's interest lies simply in being who she is—whether by being loyal to a certain political party or by being married to a certain person—rather than in engaging in expressive conduct. Similarly, as in the latter cases, the appellees' concern here is that the employee's "being who she is" will adversely affect her loyalty and thereby hinder the functioning of the office. Since the employer and employee interests in this case are so similar to those in cases where courts have applied the *Elrod–Branti* analysis, it might make sense for us to apply that test here as well.

While applying the *Elrod–Branti* analysis may seem appropriate, there is also some justification for applying the *Pickering* balance in this case. First of all, the rationale of *Pickering* and its progeny—that the state as employer has a special interest in regulating its employees' behavior in order to avoid the disruption of public functions—would seem to apply when employees exercise intimate association rights as well as when they exercise speech rights. A confidential secretary's marriage to the boss's subordinate could potentially disrupt workplace functioning as much as an instance of expressive conduct could. Second, our research has disclosed no case extending the *Elrod–Branti* analysis outside the narrow context of political patronage.[10] In contrast, courts have often extended the *Pickering* analysis outside the speech context from which it arose. Of course, we routinely apply the *Pickering* analysis in cases where public employees claim to have suffered adverse employment action in retaliation for exercising the right to free speech. *See, e.g., Goffer v. Marbury*, 956 F.2d 1045, 1049 (11th Cir.1992); *Williams v. Roberts*, 904 F.2d 634, 637 (11th Cir.1990); *Bryson v. City of Waycross*, 888 F.2d 1562, 1565–67 (11th Cir.1989). However, we have also applied the *Pickering* balance in cases where public employees claim to have been fired or demoted in retaliation for exercising their rights of expressive association, *see Hatcher v. Board of Public Education*, 809 F.2d 1546, 1559 (11th Cir.1987); *Schneider v. Indian River Community College Foundation, Inc.,* 875 F.2d 1537, 1542–44 (11th Cir.1989); *cf. Boddie v. City of Columbus*, 989 F.2d 745, 748 (5th Cir.1993), unless the employees claim to have suffered adverse employment action solely because they do not share the employer's political affiliation, in which case we apply the *Elrod–Branti* analysis. *See Terry*, 866 F.2d at 376–77 (*Elrod–Branti* analysis applies when employee suffers adverse employment action

**10.** The new sheriff in *Soderbeck* did fire plaintiff Soderbeck because of her relationship with her husband, who was the new sheriff's political enemy. *See Soderbeck*, 752 F.2d 285, 287 (7th Cir. 1985). However, the Seventh Circuit did not discuss the intimate association ramifications of the case. Rather, it focused on Mrs. Soderbeck's

marriage only to the extent that the relationship indicated that Mrs. Soderbeck shared her husband's political affiliation and that she therefore was the new sheriff's political enemy just as her husband was. *Id.* at 288. In essence, the Seventh Circuit treated *Soderbeck* as a garden-variety political patronage case.

because of political allegiance, but *Pickering* analysis applies when employee suffers adverse employment action because of expressive conduct). Furthermore, the Supreme Court has at least suggested that *Pickering* applies not only to speech and expressive association cases, but also to cases where public employees claim that employment decisions burden their liberty rights, as McCabe claims here. *See Kelley v. Johnson,* 425 U.S. 238, 245–49, 96 S.Ct. 1440, 1444–46, 47 L.Ed.2d 708 (1976) (citing *Pickering* and apparently applying analysis to employment rule burdening police officers' liberty right to choose manner of personal grooming). Various other courts have made a similar suggestion. *See, e.g., Fyfe v. Curlee,* 902 F.2d 401, 405 (5th Cir.) (applying *Pickering* to adverse job transfer burdening public school teacher's liberty right to control child's education), *cert. denied,* 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990); *Kukla v. Village of Antioch,* 647 F.Supp. 799, 805 (N.D.Ill.1986) (applying *Pickering* balance to firings burdening male police sergeant's liberty right to live with female dispatcher without benefit of marriage); *Briggs v. North Muskegon Police Dep't,* 563 F.Supp. 585, 587 (W.D.Mich.1983) (applying *Pickering* to firing burdening police officer's association and privacy right to cohabit with a woman other than his wife), *aff'd,* 746 F.2d 1475 (6th Cir.1984), *cert. denied,* 473 U.S. 909, 105 S.Ct. 3535, 87 L.Ed.2d 659 (1985). Consistently with *Kel-*

*ley* and the other cases applying *Pickering* in situations involving liberty rights,[11] we have stated in the past that the *Pickering* analysis applies to claims based on the liberty-grounded intimate association right. *See Wilson v. Taylor,* 658 F.2d 1021 (5th Cir. Unit B Oct. 1981) (*"Wilson I"*),[12] *appeal after remand* 733 F.2d 1539 (11th Cir.1984) (*"Wilson II"*).[13]

E. Appropriateness of Granting Summary Judgment to Appellees

■■■■ As mentioned above, appellees do not contest the district court's conclusion that McCabe's right to be married is a constitutionally protected freedom of association right. Nor do they contest on appeal either the district court's determination that McCabe has suffered adverse employment action or its finding that McCabe would not have been transferred were she not married to Joel McCabe. Therefore, the only issue we need address is whether the district court properly found that McCabe's transfer, although burdening her constitutional right to be married, was nonetheless justified.

Although there are good reasons to apply either the *Pickering* or the *Elrod–Branti* analysis to this case, we need not decide which of the three schemes described above applies, because appellees' transferring McCabe was justified under any of the legal standards discussed here.[14] Therefore, re-

---

11. We have sometimes implied that the *Pickering* analysis applies generally to the public employment context regardless of the type of right asserted. *See, e.g., Terry,* 866 F.2d at 375 (suggesting that *Pickering* balance applies to public employment cases generally and that *Elrod–Branti* analysis is simply specialized version of *Pickering*); *Stough,* 967 F.2d at 1526–27 (same); *cf. Kukla v. Village of Antioch,* 647 F.Supp. 799, 805 (N.D.Ill.1986) (stating that *"Pickering* ... remains a basic reference point not only for cases involving freedom of speech but for all claims that a government, as employer, has taken a personnel action which unconstitutionally infringes a protected interest.").

12. This former Fifth Circuit case, although decided after the close of business on September 30, 1981, is a Unit B case and is binding precedent under *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

13. We addressed the plaintiff's freedom of association claim in *Wilson I* and *Wilson II* without

the benefit of the later-decided *Roberts* case. *See Roberts,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Trujillo v. Board of County Commissioners,* 768 F.2d 1186, 1188 & n. 4 (10th Cir.1985); *IDK, Inc. v. Clark County,* 836 F.2d 1185, 1192 (9th Cir.1988) (citing *Trujillo* ); *Swank v. Smart,* 898 F.2d 1247, 1251–52 (7th Cir.) (citing *IDK* ), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). Since, as discussed above, *see supra* Section IV.D.3., we need not decide which of the three potential analyses governs this case, we also need not decide whether *Roberts* has eroded *Wilson I* and *Wilson II* 's conclusion that the *Pickering* analysis applies to intimate association claims.

14. All three of these schemes provide the government employer some opportunity to demonstrate that governmental interests justified the challenged employment action. As mentioned above, McCabe appears to believe that no consideration should be given to governmental interests in determining the propriety of her transfer. In other

gardless of which justification standard applies, the district court properly granted summary judgment to appellees and denied summary judgment to McCabe.

Assuming arguendo that the district court properly determined the *Pickering* analysis to apply, we agree with the district court that the *Pickering* balance tips in favor of appellees.[15]   As mentioned above, that balance requires determining whether the public employee's interest in exercising a constitutional right outweighs the employer's interest in efficiency and the effective functioning of the office. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899.   The Supreme Court has identified a number of factors for courts to consider when performing the balance: (1) whether the employee's exercising rights "impairs discipline by superiors or harmony among co-workers"; (2) whether the employee's exercising rights "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"; and (3) whether the employee's exercising rights "impedes the performance of the [employee's] duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899 (citation omitted).[16]   The principle underlying the focus on these factors seems to be that the employer's interest will weigh more heavily in the *Pickering* balance the more closely the challenged employment action serves the employer's interest in the efficient and effective functioning of the office. *See Kukla*, 647 F.Supp. at 805 ("The public employer-employee cases

... turn on the extent to which the restriction of the employee's rights relates to the demands of the government agency's work. The scales ultimately tip on whether the restriction is sufficiently related to the agency's work to outweigh the protection given to the right."); *Developments in the Law— Public Employment*, 97 Harv.L.Rev. 1611, 1748 n. 47 (noting Professor Gerald Frug's assertion that "the linchpin of Court decisions concerning the constitutional rights of public employees is [the] *relevance*" of challenged restrictions of constitutional rights to preservation of governmental efficiency) (emphasis in original).   The more a public employee's transfer or discharge is necessary to the effective functioning of the office, the more the transfer or discharge becomes justifiable, and thus the more likely it is that a court will find the transfer or discharge constitutionally permissible by finding the employer's interest to outweigh the employee's interest in the *Pickering* balance. *See, e.g., Morales v. Stierheim*, 848 F.2d 1145, 1151 (11th Cir.1988), *cert. denied sub nom. Leon v. Avino*, 489 U.S. 1013, 109 S.Ct. 1124, 103 L.Ed.2d 187 (1989); *McMullen v. Carson*, 754 F.2d 936, 939–40 (11th Cir.1985); *cf. Rankin*, 483 U.S. at 388–92, 107 S.Ct. at 2899–2901.   Where loyalty to an employer and the ability to keep confidences are essential to the proper performance of public functions, the public employer's interest will weigh heavily if the employee's exercise of the right would compromise loyalty and confidentiality, because restricting those rights may be necessary to preserve the employer's

words, she contends that once the district court found that her right to be married was constitutionally protected and that she was transferred solely because of her marriage, she was entitled to prevail. *See* Appellant's Brief at 10–17.   We reject this suggestion.   It is true that a Sixth Circuit case, *Adkins v. Board of Education*, 982 F.2d 952 (6th Cir.1993), provides some support for McCabe's assertion.   In *Adkins*, a public school principal's secretary claimed the school superintendent failed to renew her contract solely because of her marriage to the principal.   After concluding that marriage is a constitutionally protected intimate association right and that defendants' action had burdened that right, the Sixth Circuit suggested that the plaintiff would be entitled to prevail unless her employment would not have been continued even absent her protected conduct. *See Adkins*, 982 F.2d at 955–

57.   To the extent *Adkins* suggests that courts need not provide a public employer an opportunity to justify a burden on intimate association rights, we respectfully disagree.   We have found no other case supporting this proposition.

**15.**  The *Pickering* balance is a question of law, so the district court correctly concluded that it could grant summary judgment based on the outcome of the balance. *See Goffer*, 956 F.2d 1045, 1049 (11th Cir.1992).

**16.**  *Rankin* also identified as relevant "the manner, time, and place of the employee's expression" and "the context in which the dispute arose." *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899 (citation omitted).   These factors are obviously not relevant in the instant situation.

interest in effective office functioning. *See Pickering,* 391 U.S. at 570, 88 S.Ct. at 1735; *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899; *see also McDaniel v. Woodard,* 886 F.2d 311, 315 (11th Cir.1989). For this reason, "[w]hen close working relationships are essential to fulfilling public responsibilities," the Court has accorded "a wide degree of deference to the employer's judgment." *Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692; *Goffer,* 956 F.2d at 1049. There is no genuine issue that loyalty and the ability to keep confidences are essential to the proper performance of McCabe's former job. McCabe conceded at oral argument that the position of secretary to the chief of police requires keeping confidences. Furthermore, both appellees and McCabe have produced substantial evidence that loyalty and keeping confidences are required for proper performance of the job from which McCabe was transferred. First, there is no dispute that Chief Sharrett's duties involve confidential matters. In an affidavit, Chief Sharrett swore that his duties include both hiring, disciplining, and discharging all Plantation police officers and supervision of the Internal Affairs Unit ("Internal Affairs"), the section that investigates alleged misconduct by Plantation police officers. *See* R1–23–2 (Affidavit of Plantation Police Chief C.E. Sharrett, Jr.). McCabe has produced no evidence contradicting these assertions.

Second, there is no dispute that McCabe's duties required that she have access to some confidential materials. Chief Sharrett swore that fulfillment of many of his duties often requires making communications that are not to be discussed outside his office. *See id.* at 2–3. He also attested that, in order for him to perform his duties efficiently and effectively, his secretary must have access to much of the same confidential information to which he has access, and that his secretary prepares his correspondence, much of which is confidential and not to be discussed outside his office. *Id.* at 3. McCabe has produced no evidence to contradict these assertions. In fact, the only evidence she has produced for the purpose of rebutting appellees' contention that her position involves access to confidential information, a copy of the City of Plantation's official job description for the position of secretary, actually tends to demonstrate that her position *does* involve keeping confidences, for it states that a secretary's work "often involves some degree of confidentiality." R1–15, Exhibit (Plantation Job Description for Position of Secretary).

Other evidence McCabe has produced tends to confirm that her job duties required her to have access to confidential information. She testified at her deposition that she performed Chief Sharrett's typing and filing and that she answered both his public and his private phone lines. *See* R1–51–11–12 (Deposition of Ellen McCabe). Since Chief Sharrett supervised such confidential matters as employee discipline and discharges, it seems clear that in the course of performing her secretarial duties McCabe would come into contact with sensitive information. In fact, McCabe admitted that she handled some materials regarding sensitive Internal Affairs investigations into officer misconduct; at her deposition she testified that one of her duties was typing the opinions of Internal Affairs investigators regarding the discipline they recommended for particular officers. *Id.* at 27. Her contact with Internal Affairs opinions occurred while the investigations were still ongoing, for after receiving the opinions typed by McCabe, the chief had the ultimate duty to decide what form of disciplinary action would be taken. *Id.* at 28. McCabe also testified that in the course of answering the chief's telephone, she handled public complaints regarding officers, which were sometimes referred to Internal Affairs. *Id.* at 35–37.

Finally, there is no dispute that the police chief's office cannot function effectively unless the police chief's secretary is loyal to him and able to maintain the confidentiality of the office. Chief Sharrett swore that "[i]t is absolutely essential to the efficient and effective performance and functioning of the office of the Chief of Police that [his] Executive Secretary maintain the absolute confidence of the office and that [he] have complete faith, trust and confidence in [his] Executive Secretary." R1–23–2–4 (Affidavit of Plantation Police Chief C.E. Sharrett, Jr.). McCabe produced no evidence that controverted this assertion. Moreover, that

McCabe was privy to information regarding Internal Affairs investigations and regarding the discharge of officers makes clear that any inability on her part to keep matters confidential would seriously compromise the effective functioning of the chief's office. For example, clearly it could irreparably undermine a misconduct investigation if information regarding the investigation were leaked to the department's rank and file through McCabe and her husband. Thus, it is clear that loyalty and the ability to keep confidences are required for proper performance of McCabe's former job. Even without the substantial evidence that McCabe's former position requires loyalty and confidentiality, it is a matter of common experience that loyalty and the ability to keep confidences are essential qualities in a personal secretary to a policymaker such as a police chief. *See Soderstrum*, 925 F.2d at 141 (referring to "realistic understanding of the confidential relationship between secretaries and their bosses"); *cf. McDaniel*, 886 F.2d at 316–17 (reasonable to believe loyalty and confidentiality necessary qualities in judge's confidential secretary); *Faughender*, 927 F.2d at 914 ("a mayor's secretary is clearly the type of position that involves access to confidential and political material, and political loyalty, whether partisan or personal, is an essential attribute of the job.").

The only remaining question is whether McCabe's exercise of her intimate association right to be married to Joel McCabe threatened her loyalty to Chief Sharrett and her ability to maintain the confidentiality of the office so much that appellees' interest in the effective functioning of the office outweighs McCabe's interest in exercising her intimate association right. No one disputes that Chief Sharrett was subjectively concerned that McCabe's marriage to Joel McCabe would affect her loyalty to him and undermine her ability to keep confidences. Chief Sharrett swore in his affidavit that

I was personally and professionally concerned and uncomfortable having the wife

of an officer under my command functioning as my confidential Executive Secretary. The position of Executive Secretary requires strict trust and confidence, sometimes even possibly to the detriment or adverse interest of Mrs. McCabe's husband, Sgt. Joel McCabe. I felt that such a situation was potentially disruptive of the efficient and effective functioning and performance of the office of the Chief of Police. I did not want to wait until a disruption occurred before taking action.

R1–23–4 (Affidavit of Plantation Police Chief C.E. Sharrett, Jr.). McCabe agrees that Chief Sharrett transferred her because of his personal concern that her marriage might breach the confidentiality of his office. *See* R1–10 Exhibit A at 5 (Affidavit of Ellen McCabe).

While it is clear that an employer's purely subjective fear of disruption is insufficient to outweigh an employee's exercise of her rights, *see Williams*, 904 F.2d at 638, it is also plain that Chief Sharrett's concern that McCabe's marriage would undermine her loyalty to him and thus the confidentiality of his office was reasonable and not merely subjective. It is a matter of common experience that spouses tend to possess a higher degree of loyalty to their marital partners than to their superiors, and often discuss workplace matters with one another, even matters that a superior has designated as confidential. Thus, as a matter of common experience it is objectively reasonable for a police chief to be concerned about confidentiality when his confidential secretary is married to a subordinate.

In fact, because of the particular nature of McCabe's job and Chief Sharrett's job, we believe that it was not only reasonable but necessary for Chief Sharrett to transfer McCabe in order to preserve the confidentiality of his office. Thus, appellees' interest weighs particularly heavily in the *Pickering* balance.[17] Evidence produced by both appel-

---

17. This is true even though appellees have produced no evidence that McCabe's marriage has actually disrupted the chief's office. Evidence produced by both parties demonstrates that McCabe actually breached no confidences during the brief period she served as Chief Sharrett's secretary. McCabe testified at her deposition that when Chief Sharrett notified her of her transfer, she asked him whether she had ever violated the confidentiality of his office, and he

lees and McCabe demonstrates that if the chief's secretary did breach the confidentiality of the chief's office she would most likely seriously damage the functioning of that office. For example, as we suggested above, it might seriously undermine an Internal Affairs misconduct investigation if information regarding the investigation were leaked outside the police chief's office.[18] A breach of confidentiality may not have occurred before, and the likelihood of such a breach occurring may not have been overwhelming. However, because any breach of confidentiality would likely cause such serious damage to office functioning, it was objectively necessary for Chief Sharrett to take whatever steps he could to ensure that no such breach ever occurred. As discussed above, common experience suggests that a confidential secretary's marriage to a subordinate of her police chief would compromise her loyalty to the chief and her ability to keep confidences. Because McCabe was married to one of Chief Sharrett's subordinates, Joel McCabe, Chief Sharrett had no alternative for ensuring the confidentiality of his office besides transferring McCabe. Because Chief Sharrett's transferring McCabe was necessary to serve his interest in maintaining the effective functioning of his office, we readily conclude that appellees' interests are heavy enough in this situation to outweigh McCabe's interest in her marital association even without any evidence of actual disruption. *See Waters,* 684 F.2d 833, 839 n. 12 (11th Cir.1982) ("Because lives are often at stake, the danger of harm to a police department's discipline is too great to insist on waiting for the harm to

result.... Consequently, we conclude that a reasonable likelihood of harm generally is ... enough to support full consideration of the police department's ... interests"); *McMullen,* 754 F.2d at 940 (same) (quoting *Waters* ).[19] Therefore, appellees' transfer of McCabe did not infringe her intimate association right to be married, and the district court properly granted summary judgment to appellees and denied it to McCabe.

Even if appellees correctly assert that the *Elrod–Branti* analysis rather than the *Pickering* analysis should apply, the district court properly granted appellees summary judgment. The dispositive question under the *Elrod–Branti* analysis is whether the employer can demonstrate that forgoing associational rights "is an appropriate requirement for the effective performance of the public office involved," *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295; *see supra* Section IV.D.3.b.; in other words, the employer must demonstrate that the employee's exercise of associational rights would hinder the effective functioning of the employer's office. We have already determined, in the course of conducting the *Pickering* analysis, that appellees have demonstrated a reasonable likelihood that McCabe's exercising her intimate association right to be married to Joel McCabe would compromise two qualities necessary to the effective performance of her job—her loyalty to Chief Sharrett and her ability to keep confidences, and that appropriate regard for the police department's legitimate interests thus required McCabe's transfer. Therefore, we readily conclude that appellees have made the required showing under *Branti* that

responded "No, you have not." R1–51–51 (Deposition of Ellen McCabe). In his affidavit Chief Sharrett essentially admitted that McCabe had not actually breached any confidences when he stated that he transferred her because "I did not want to wait until a disruption occurred before taking action." R1–23–4 (Affidavit of Plantation Police Chief C.E. Sharrett, Jr.).

18. Because a police department's mission, unlike that of other public agencies, requires dealing with threats to public safety, the maintenance of high morale, internal discipline, and confidentiality tends to be uniquely important to the effective functioning of a police department. *See McMullen v. Carson,* 754 F.2d 936, 940 (11th Cir.1985); *Soderstrum v. Town of Grand Isle,* 925 F.2d 135, 140–41 (5th Cir.1991).

19. Because maintaining high morale, discipline, and confidentiality is so important to proper police department functioning, and because these qualities may be compromised relatively easily by employees' exercising their rights, we have held that police departments' interest in regulating their employees' conduct tends to be particularly heavy. *See Waters v. Chaffin,* 684 F.2d 833, 836 (11th Cir.1982) ("the state's interest in regulating its police force can be especially compelling"); *Eiland v. City of Montgomery,* 797 F.2d 953, 958 (11th Cir.1986) (same) (quoting *Waters* ), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

**1574**

McCabe's transfer was justified and were entitled to prevail even under the *Elrod–Branti* analysis. Thus, the district court's grant of summary judgment to appellees was proper regardless of whether *Pickering* or *Elrod–Branti* applies.

Even if the proper legal standard for determining whether McCabe's transfer was justified is general strict scrutiny analysis, appellees are still entitled to prevail. Strict scrutiny analysis requires the government to demonstrate that its challenged action was necessary to serve a compelling state interest. The government's interest in the efficient and effective performance of government functions is compelling. *Elrod*, 427 U.S. at 372, 96 S.Ct. at 2689; *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1237–38 (11th Cir.1992). As we have explained in the course of performing the *Pickering* balance, because McCabe's ability to keep confidences was essential to the proper functioning of the police chief's office, and because her marriage to Joel McCabe was likely to undermine her ability to keep confidences, transferring McCabe was necessary to serve the compelling interest of preserving the effective functioning of the Plantation police chief's office. Therefore, Chief Sharrett's transferring McCabe because of her marriage to Joel McCabe was justified and did not violate her intimate association right to be married even under strict scrutiny analysis. Thus, the district court properly granted appellees summary judgment regardless of what legal standard applies on the issue of justification.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to appellees and denial of summary judgment to McCabe.

AFFIRMED.

EDMONDSON, Circuit Judge, concurs in the result.