**Jo Ann SUSANNO, Plaintiff,**

v.

**LEE COUNTY BOARD OF COUNTY COMMISSIONERS and Lee County, Defendants.**

**No. 93–188–CIV–FtM–15D.**

United States District Court, M.D. Florida.

March 1, 1994.

John F. Hooley, Vega, Brown, Stanley, Martin & Zelman, P.A., Naples, FL, for plaintiff.

Thomas L. Wright, Lee County Attorney's Office, Ft. Myers, FL, for defendants.

## OPINION AND ORDER

GAGLIARDI, Senior District Judge.

In her complaint, Plaintiff Jo Ann Susanno ("Plaintiff") claims that Defendants Lee County Board of County Commissioners and Lee County ("Defendants") deprived her of her constitutional rights as follow: in Count One, of her First Amendment rights of freedom of speech and association; in Count Two, of her substantive due process rights; and in Count Three, of her procedural due process rights. Plaintiff claims that Defendants' unconstitutional conduct—adverse employment decisions based on improper motives—resulted in her constructive termination in violation of section 1983 of Title 42, United States Code, 42 U.S.C. § 1983 (1966 & Supp.1993) ("§ 1983").

A jury trial of this case commenced on February 14, 1994. At the end of the first day of trial, Defendants moved to dismiss all three counts; the Court construed this as a motion for judgment as a matter of law under Rule 50(a)(1) of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 50(a)(1) (1966 & Supp.1993) ("Rule 50(a)(1)"). After ascertaining that Plaintiff had completed her proof with regard to Count One, the Court granted

Defendants' motion as to that count and reserved decision as to Counts Two and Three.

On February 15, 1994, Plaintiff continued the presentation of her case. Outside the presence of the jury, Plaintiff made further arguments and a supplemental proffer with regard to Count One; the Court implicitly construed these submissions as support for an unarticulated motion to reconsider. On February 17, 1994, Plaintiff again made a proffer as to all three counts. Defendants then renewed their motion for judgment as a matter of law. After considering Plaintiff's proffer of the balance of her case, the Court orally granted Defendants' Rule 50(a)(1) motion as to all three counts. This Opinion and Order constitutes a fuller articulation of the Court's rationale for granting Defendants' motion.

## I.  FACTS

The material facts in the light most favorable to Plaintiff are as follow. Marsha Segal–George ("Segal–George") was appointed as the County Administrator of Lee County in April 1989. During her tenure in that position, she was involved in some local controversies. Commissioner Shlisher ("Shlisher") threatened Segal–George that because of her involvement in these controversies, she and her staff (including Plaintiff) would be fired. Other commissioners threatened Segal–George that they would vote against her. She was eventually forced to resign her position as County Administrator on June 5, 1991.

Ms. Segal–George further testified that Plaintiff worked closely with her as her assistant and that Plaintiff's performance was excellent. She successfully recommended that Plaintiff be promoted from an Administrative Secretary, Level III to an Administrative Assistant, Level II, which resulted in Plaintiff receiving a substantial pay increase.

Plaintiff testified that she started working for Lee County on July 29, 1985 as a Clerk–Typist, Level III. She received and read the Lee County Employee Handbook ("Employee Handbook"), (Plaintiff's Exhibit 73), as part of her orientation; she was informed and acknowledged receipt of memoranda regarding any revisions. The Employee Handbook outlined a grievance procedure which was designed to culminate in review by a Grievance Committee and the County Administrator. (Plaintiff's Exhibit 73 at 25–27). Upon its publication in 1986, Plaintiff was also given a copy of the Lee County Personnel Policies and Procedural Manual ("Policy Manual"), (Plaintiff's Exhibit 71); Defendants also provided her with memoranda highlighting any revisions.

After receiving several pay increases and promotions, Plaintiff eventually became an Administrative Secretary, Level II. She then started working for Segal–George and was eventually promoted to an Administrative Assistant, Level II; her duties correspondingly increased. She worked under Segal–George for three years.

During the time period that Segal–George was involved in the local controversies, Segal–George had Plaintiff call the *Bonita Banner* to acquire a copy of an earlier-published newspaper article relating to these controversies. Shlisher was outraged that such an inquiry had been made, and he informed Plaintiff that he considered such action inappropriate. Plaintiff overheard threats by Shlisher that Segal–George and her team would be forced out. After Segal–George's resignation on June 5, 1991, Bob Gray was appointed as acting County Administrator.

On June 30, 1991, Plaintiff was transferred to a newly-created Department of General Services, to work under Hans Behrens ("Behrens"), the department's director. On July 30, 1991, Jackie House ("House"), the Personnel Services Supervisor, recommended that Plaintiff be reclassified downward. After discussing the recommendation with Plaintiff, Behrens rejected it.

On May 13, 1992, House submitted a report to Behrens comparing Plaintiff's position and pay with those of Administrative Secretaries, Level III. On June 5, 1992, Plaintiff was transferred to a newly-created Department of Information Management, assigned to work as an assistant to Alan Mundy, the department's director. Soon thereafter, Behrens, in his new position as Director of Construction Services, approved Plaintiff's demotion from an Administrative Assistant,

Level II to Administrative Secretary, Level III, accompanied by a commensurate decrease in pay; Defendants contend in their submissions to the Court that Plaintiff was reclassified, not demoted. George Bradley, the acting Director of Human Resources ("Bradley"), informed Plaintiff on June 26, 1992 that her downward reclassification became effective on the previous day and that she was reclassified because her new position only required the skills of an Administrative Secretary, not an Administrative Assistant.

Dissatisfied with her demotion, Plaintiff attempted to follow the grievance procedure described in the Employee Handbook. She protested her demotion through several letters, phone calls and submissions to various officials, including Behrens, Bradley, Chairperson of the Grievance Committee Anita Flaitz and acting County Administrator Julio Avael; she received verbal or written responses from all these officials. The denouement of this correspondence was Behrens informing Plaintiff that she was not entitled to a hearing before the Grievance Committee because her reclassification was based on purely administrative needs, thus not qualifying for such review. Frustrated, Plaintiff resigned on July 22, 1992.

Both Segal–George and Plaintiff also testified about their respective understanding of Plaintiff's employment status. Though Segal–George never told Plaintiff that Plaintiff had a property interest in her employment or that her position was a permanent one, it was Segal–George's impression that Lee County employees were not at-will employees. Segal–George had fired prior assistants without admonition. She knew about the Policy Manual and had signed for its revisions, as had Plaintiff.

Plaintiff knew that the Employee Handbook did not explicitly state her employment status. However, Plaintiff was under the impression that she had certain rights with regard to her employment, including access to the grievance procedure and the Grievance Committee. Plaintiff was aware of the Policy Manual but Defendants never orally highlighted or explained the employee at-will concept to her.

The Court allowed Plaintiff to proffer the balance of her case. Plaintiff's proffer included the following: the *Bonita Banner* incident; her performance evaluations indicating that in general she was consistently given high ratings; the absence of posters in her work-place indicating that employees only had at-will status; an allusion to her duties involving political projects such as a baseball stadium, a waste site and the like; the treatment of similarly-situated employees; and the absence of personal notice before her demotion.

## II. STANDARD FOR RULE 50(a)(1) RELIEF

■ Rule 50(a)(1) states in relevant part: ·

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to a claim ... that cannot under controlling law be maintained[.]

Fed.R.Civ.P. 50(a)(1) (as amended Apr. 22, 1993, effective Dec. 1, 1993). A court, in deciding whether to grant a motion for judgment as a matter of law, must view the evidence together with logical inferences in the light most favorable to the non-movant. *Tate v. Government Employees Ins. Co.,* 997 F.2d 1433, 1435–36 (11th Cir.1993). "A judgment as a matter of law 'will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 1436 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Thus, to withstand such a motion, the non-movant must produce facts sufficient to create a jury question. *See Tate,* 997 F.2d at 1438.

## III. COUNT ONE

■ Plaintiff alleges in Count One that Defendants violated her freedoms of speech and association. However, Plaintiff did not

introduce evidence that she made any speech or other expression, actual or symbolic, that led to her being subject to allegedly unconstitutional treatment. Plaintiff's full proffer confirmed that no evidence would be introduced regarding Plaintiff actually having made or engaging in any type of First Amendment speech. The *Bonita Banner* incident involved Plaintiff ministerially inquiring about whether she could receive a copy of an article for her supervisor, nothing more. Thus, the Court finds that Plaintiff failed to introduce evidence sufficient to create a jury question as to whether Defendants violated her freedom of speech.

■ With regard to the contention in Count One that her freedom of association was violated, Plaintiff argues that she was constructively terminated because of her association with Segal–George. Plaintiff did not claim or produce any evidence that she herself was involved in the local controversies in any way, only that she worked as an administrative assistant for someone who had become a local political figure.

The contours of the First Amendment right to freedom of association was a subject of recent explication by the Court of Appeals for the Eleventh Circuit. In *McCabe v. Sharrett,* 12 F.3d 1558 (11th Cir.1994), the court stated that Supreme Court precedents have established two types of freedom of association cases—those based on " 'intimate association' " and those based on " 'expressive association' "—or some amalgamation thereof, *McCabe,* 12 F.3d at 1562–63 (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 616–20, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984)). Though not completely clear, Plaintiff here appeared at one point to argue that her relationship with Segal–George was a protected intimate association. Assuming that Plaintiff was so contending, the Court holds that their subordinate-supervisor relationship without more is not the type of "intimate association" protected by the First Amendment. *See Roberts,* 468 U.S. at 618–20, 104 S.Ct. at 3250.

■ Plaintiff's main argument was that Defendants violated her freedom of expressive association. The Eleventh Circuit defined the right of expressive association as "the freedom to associate for the purposes of engaging in activities protected by the First Amendment, such as speech, assembly, petition for redress of grievances, and the exercise of religion," *McCabe,* 12 F.3d at 1563; that is, "the purpose of the association [must be] to engage in activities *independently* protected by the First Amendment," *id.* (emphasis added); *see also Schneider v. Indian River Community College Found.,* 875 F.2d 1537, 1543–1545 (11th Cir.1989) (reversing grant of summary judgment to defendants in an expressive association case where one defendant questioned plaintiff regarding his association with a former co-worker to determine if plaintiff would continue earlier joint protests of radio station policies regarding coverage of local controversy); *Hatcher v. Board of Public Educ. & Orphanage,* 809 F.2d 1546, 1555–1558 (11th Cir.1987) (reversing grant of summary judgment to defendant where plaintiff supported his freedom of expressive association claim by alleging facts relating to his protest of the planned closing of several schools and an incident where defendant prevented plaintiff from bringing a minister and school board member to certain meetings).

Here, Plaintiff failed to produce any evidence that she, alone or jointly with Segal–George, engaged in activity independently protected by the First Amendment. Pretermitting the question of whether Segal–George's controversy-producing activities were protected by the First Amendment, the difficulty here is that Plaintiff failed to introduce any evidence linking her to those activities beyond the ministerial tasks she undertook on Segal–George's behalf per their subordinate-supervisor relationship. Thus, the Court finds that Plaintiff failed to create a jury question as to whether Defendants violated her freedom of expressive association.

## IV. COUNTS TWO AND THREE

■ Plaintiff alleges in Counts Two and Three respectively that Defendants violated her substantive and procedural due process rights. A claimant alleging that her due process rights were violated in a constructive termination case must first demonstrate that she had a protected property interest in con-

tinued employment, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 537–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), an issue determined by looking at state law, *Bishop v. Wood,* 426 U.S. 341, 343–45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *McGregor v. Board of Comm'rs,* 956 F.2d 1017, 1022 (11th Cir.1992). In this case, Florida law governs the issue of whether Plaintiff had a property interest in continued employment.

Under Florida law, unless an employment agreement indicates to the contrary, employees are deemed to have an at-will status. "Where the term of employment is discretionary with either party or indefinite, then either party for any reason may terminate it at any time and no action may be maintained for breach of contract." *Smith v. Piezo Technology & Professional Adm'rs,* 427 So.2d 182, 184 (Fla.1983); *see also Grappone v. City of Miami Beach,* 495 So.2d 838, 839 (Fla.Dist.Ct.App.1986) (contract that does not provide for a definite term of employment is terminable at will). However, where a policy manual can be read to elevate a plaintiff's status to one above that of an at-will employee, the plaintiff may maintain an action under § 1983. *Adams v. Sewell,* 946 F.2d 757, 764 (11th Cir.1991) (manual stated that county employees could only be discharged for " 'violation of rules, unsatisfactory performance or conduct' "). Thus, employees in Florida only have an at-will status absent an indication to the contrary.

Here, Plaintiff failed to introduce evidence sufficient to create a jury question as to the existence of an explicit employment arrangement indicating that she worked for Defendants on something other than an at-will basis. First, Plaintiff was never given an employment contract relating to the duration or level of her employment. Second, though the Employee Handbook outlined grievance procedures available to certain employees, it did not contain language indicating explicitly or implicitly that employees such as Plaintiff were not merely at-will employees or could only be terminated for cause. In fact, the Employee Handbook stated in a section headed "NOTICE" that Defendants could "add, modify, alter, or discontinue without notice any policies included herein, whichever serves the best interest of Lee County." (Plaintiff's Exhibit 73 at 27) (capitalization in original). Finally, the Policy Manual explicitly stated that employees such as Plaintiff were at-will employees. In its "Foreword" section, the Policy Manual stated:

These Policies and Procedures are intended to serve as a guide for all employees. *Even though the Policies and Procedures contain a section on corrective action and pre-termination and post-termination appeal, it is the intent of the County Commission that all employees of the County are employees at-will.* By the adoption of these Policies and Procedures, the County is not intending to create and does not create any definite term or guarantee of employment for any period of time.

(Plaintiff's Exhibit 71 at 1) (emphasis added). The Employee Handbook and Policy Manual conjunctly governed the entire period of Plaintiff's employment with Defendants; neither indicated that Plaintiff was anything but an at-will employee.

Where a plaintiff does not have an express, contractual property interest in continued employment, the plaintiff must rely on a state or local ordinance or on a "mutually explicit understanding" to support a claim that she was not merely an at-will employee. *Bishop,* 426 U.S. at 343–45, 96 S.Ct. at 2077; *Perry v. Sindermann,* 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A plaintiff's subjective claim of entitlement to continued employment does not suffice to create a mutually explicit understanding. *See Hatcher,* 809 F.2d at 1549. In a case where a plaintiff could not claim the benefit of a state law or mutual understanding that elevated his status to one above that of an at-will employee, the Eleventh Circuit, in affirming a lower court's dismissal of the plaintiff's claim, stated:

[The plaintiff] could not prove that the county deprived him of *any* property interest much less without due process of law. The district court correctly found that he was not deprived of any constitutionally protected rights. Without such a constitu-

tional right there was no constitutional violation.

*McGregor,* 956 F.2d at 1022 (emphasis in original) (citation omitted). That court premised its decision on the Florida rule of law that at-will employees have no property interest in their continued employment. *Id.; see also Smith v. Town of Golden Beach,* 403 So.2d 1346, 1347–48 (Fla.Dist.Ct.App.1981) (affirming a lower court's dismissal of an employee's due process claim because the employee could be terminated without cause and thus had no property interest in continued employment); *Purdy v. Cole,* 317 So.2d 820, 823 (Fla.Dist.Ct.App.1975) (employee had no property interest in his employment where he could be discharged without cause).

Here, Plaintiff could not rely on either of the aforementioned alternative methods of bolstering her claim that she had a property interest in continued employment. She did not contend that a state or local ordinance elevated her employment status. Plaintiff's subjective belief that she was entitled to a grievance process and Segal–George's subjective belief that Lee County employees did not work on an at-will basis falls far short of the requisite mutually explicit understanding between Plaintiff and Defendants that she was not merely an at-will employee. Having reviewed the exhibits, testimony and Plaintiff's proffer, the Court finds that Plaintiff did not produce evidence sufficient to create a jury question regarding the at-will basis of her employment. As an at-will employee, Plaintiff had no property interest in continued employment and thus did not prove a viable cause of action under the Due Process Clause of the Fourteenth Amendment.

## V. CONCLUSION

Viewing the evidence and logical inferences thereof in the light most favorable to Plaintiff, the Court finds that no reasonable jury could return a verdict for Plaintiff with regard to her claim in Count One that her freedoms of speech and association were violated, in Count Two that her substantive due process rights were violated, and in Count Three that her procedural due process rights were violated. Thus, the Court grants Defendants' motion for judgment as a matter of law as to all three counts pursuant to Rule 50(a)(1).

So Ordered.