**Corine ANDERSON–FREE and Van Tony Free, III, Plaintiffs,**

v.

**Roosevelt STEPTOE, et al., Defendants.**

**Civil Action No. 95–D–635–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 27, 1997.

---

946

Stephen Roger Glassroth, Joseph Peter Van Hest, Montgomery, AL, for Plaintiffs.

Solomon S. Seay, Jr., Montgomery, AL, Tyrone C. Means, Kenneth L. Thomas, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before this court is defendants' motion filed August 9, 1995, to dismiss plaintiffs' amended complaint.[1] Plaintiffs filed a response in opposition on August 25, 1995, incorporating a response to a previous motion to dismiss. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that defendants' motion is due to be granted and denied in part.

## JURISDICTION

Based upon 28 U.S.C. § 1331 and 1343, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## FACTUAL BACKGROUND

Plaintiff Corine Anderson–Free ("Anderson–Free") was hired in 1989 as an instructor in the School of Music at Alabama State University ("ASU"). She was employed as an instructor through a series of one-year contracts from 1989 to 1993. Anderson–Free remained at ASU from 1989

---

1. Defendants filed their first Motion to Dismiss on June 14, 1995. In response, plaintiffs filed an opposition brief on July 14, 1995, and amended their complaint. Defendants then filed a motion to dismiss the amended complaint on August 9, 1995. Accordingly, the court finds that defendants' first motion to dismiss is due to be denied as moot.

to 1993, receiving above average evaluations. In 1990, Anderson–Free married plaintiff Van Tony Free, III, ("Free"), who was and remains a tenured assistant professor at ASU. Beginning in 1990, Free was an outspoken member of the Faculty Senate, often commenting on issues concerning the University and the community. Moreover, Free was instrumental in establishing and organizing the American Federation of Teachers ("AFT"), a labor union, on ASU's campus, and Anderson–Free assisted in establishing and organizing the AFT union.

In the Spring of 1993, a student, who received two grades of "incomplete" from Anderson–Free, decided to challenge the grades assigned to him by Anderson–Free. On May 7, 1993, defendant Thomas Hager, Dean of the School of Music at ASU, conducted a hearing on the matter and later changed the student's grades. Anderson–Free contends that the hearing violated procedures found in the Faculty Handbook in that Hager failed to conduct an informal meeting between the student, Anderson–Free, and himself prior to a formal hearing, Hager failed to provide Anderson–Free with adequate notice to prepare for the hearing, and Hager denied Anderson–Free the opportunity to have a union representative present at the hearing to advise her. After the grade-change incident, Free wrote a memorandum objecting to the position taken by the School of Music and ASU's administration on the grade-change and criticizing the lack of communication between the faculty within the School of Music.

On or about May 17, 1993, Anderson–Free was notified that her contract for the upcoming academic year had not been renewed. Following establishing procedures, Anderson–Free filed a grievance with the ASU Committee on Faculty Grievances. The committee found that Hager and defendant Roosevelt Steptoe ("Steptoe"), the Vice President of Academic Affairs at ASU, had failed to follow proper procedures in their decision not to renew Anderson–Free's contract. The committee also recommended to defendant Clifford Baker ("Baker"), Interim President of ASU, that Anderson–Free's non-renewal be rescinded. Baker, however, elected not to follow the committee's recommendation and, instead, upheld Hager and Steptoe's decision not to renew Anderson–Free's contract.[2]

Anderson-Free claims that her due process rights were violated in that she was not provided an impartial decisionmaker. Specifically, she argues that Hager and Steptoe[3] were biased against her due to her refusal to participate in the grade-change hearing, her refusal to change the student's grade, and the public criticism her husband had leveled at the School of Music and the ASU administration. Additionally, Anderson–Free alleges, upon information and belief, that Baker too was biased against her. Anderson–Free also claims that the defendants' decision not to renew her contract was due to her relationship with her husband and, therefore, violated her protected rights to marital privacy and association. Free brings his own claim, arguing that defendants' non-renewal of Anderson–Free's contract was an act of retaliation against Free for exercise of his free speech rights.

Both plaintiffs bring their claims under 42 U.S.C. § 1983. Anderson–Free brings her due process claim against defendants in their official capacities only. The rest of the plaintiffs' claims are brought against defendants in both their official and individual capacities.[4]

---

**2.** Baker notified Anderson–Free of his decision on or about April 29, 1994. *See* Pls.' Br. at 15–16.

**3.** Although it is not made entirely clear in the complaint, the inference in Anderson–Free's complaint is that Hager and Steptoe made the initial decision not to renew Anderson–Free's teaching contract. In their response brief, plaintiffs state that "subsequent to plaintiff Anderson–Free's decision to stand by the grade she had assigned, defendant Hager recommended to de-

fendant Steptoe, that plaintiff Anderson–Free's contract not be renewed, and thus, that she be terminated following the end of her final one-year contract. Defendant Steptoe accepted this recommendation without reviewing the facts, or attempting to ascertain a reason." Br. at 4.

**4.** Plaintiffs have named the members of the Board of Trustees as defendants in this action. However, these members are sued in their official capacities, as parties necessary to grant in-

## MOTION TO DISMISS STANDARD

Defendants argue that pursuant to Federal Rule of Civil Procedure 12(b), a number of plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g. U.S. v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir. 1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held that "motions to dismiss for failure to state a claim should be denied unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam,* 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir.1982)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

## DISCUSSION

■■■■■ 1983 of Title 42 of the United States code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose action under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal stat-

utes. Plaintiffs bring their claims under 42 U.S.C. § 1983, alleging that their constitutional rights were violated. Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established elsewhere. *See Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989). Thus, the court must determine whether plaintiffs have asserted a cognizable claim under § 1983. *See Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994). First, however, the court will consider defendants' contention that plaintiffs' claims are barred by the statute of limitations.

### A. Statute of Limitations

■ Defendants contend generally that any claims asserted by plaintiffs based on incidents occurring on or before May 12, 1993, are barred by the applicable statute of limitations. Defendants do not, however, specify which particular claims they are referring. Claims brought in Alabama and arising under 42 U.S.C. § 1983 are subject to a two-year personal injury statute of limitations. *See Lufkin v. McCallum,* 956 F.2d 1104, 1105 (11th Cir.1992); Ala.Code § 6–2–38(1) (Supp.1989). Plaintiffs filed the instant complaint on May 12, 1995, and, therefore, absent some exception, any claims arising prior to May 12, 1993, would indeed be barred.

■ Plaintiffs, however, explain that their causes of action did not accrue prior to May 12, 1993. They point, instead, to the letter Anderson–Free received on or about May 17, 1993, notifying her of the non-renewal of her contract, and argue that their causes of action, which are all based on that non-renewal, occurred no earlier than May 17, 1993. The court agrees that plaintiffs' challenge of ASU's employment decision appears to be safely within the statute of limitations. *See Delaware State College v. Ricks,* 449 U.S. 250, 262 n. 17, 101 S.Ct. 498, 506 n. 17, 66 L.Ed.2d 431 (1980) (suggesting that initial notice of the unfavorable employment decision is the point at which the statute of limitations begins running).

junctive relief, and not in their individual capaci- ties.

## B. Due Process Claim

Anderson-Free's first claim is that she was denied procedural due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution. The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Defendants argue, however, that Anderson–Free has failed to allege a liberty or property interest and that, as a matter of law, she has none. Although it is true that Anderson–Free fails to state in her complaint explicitly what her property interest is and on what it is based, the court finds that the pleading is sufficiently detailed to put defendants on notice that Anderson–Free is alleging a property interest in her continued employment at ASU based on the faculty handbook.[5]

■■■ Defendants primarily argue that Anderson–Free's due process claim should be dismissed because she has failed to meet the heightened specificity pleading requirement for § 1983 actions. Because Anderson–Free has stated, however, that she brings her due process claim only against the defendants in their official capacity, the court is not convinced that a heightened standard of pleading is required in this instance. In *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied, sub nom, Deutcsh v. Oladeinde*, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993), the Eleventh Circuit tightened the pleading requirements in a § 1983 action, stating that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if we are to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." How-

ever, qualified immunity is not implicated where a state official is sued only in his or her official capacity, as is the case in the instant action. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991). Instead, the "only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."[6] *Id.* Because qualified immunity is not a concern, at least in the due process claim, the court finds that Anderson–Free need not meet the heightened pleading requirement; consequently, the court makes no determination as to whether Anderson–Free's due process claim in the amended complaint would withstand a heightened pleading standard. To the extent that Anderson–Free must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, the court finds Anderson–Free's due process claim to be sufficiently stated.

■■■ Defendants also argue, however, that Anderson–Free does not have a claim as a matter of law—i.e., that she has no property interest as a matter of law. Citing ASU's established procedures and the existence of the Faculty Grievance Committee, Anderson–Free suggests in her complaint that ASU is constrained by established procedures in non-renewing contracts. The law is clear that an employee with a contractual expectation of continued employment has a property interest in that employment. *See Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1151 (11th Cir. 1994); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972). "The existence of a legitimate claim of entitlement to a property interest in continued employment is to be

---

5. The complaint, which is hardly the model of an artfully pleaded complaint, is unclear as to whether Anderson–Free is also alleging she was entitled to due process during the grade-change hearing. However, because the grade-change hearing occurred on or about May 7, 1993, it would in fact be barred by the applicable statute of limitations. Consequently, the court will not take up the extremely dubious issue of whether Anderson–Free had a property or liberty interest in the grade-change hearing.

6. To the extent that Anderson–Free may be requesting compensatory or punitive damages for the alleged due process violations, the court reminds Anderson–Free that because she has elected to sue the defendants in their official capacity, she is entitled only to prospective injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (holding that when a state official in sued in his or her official capacity for injunctive relief, the official is a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the state.").

determined in accordance with state law." *Adams v. Bainbridge–Decatur County Hosp. Authority,* 888 F.2d 1356, 1363 (11th Cir. 1989) (quoting *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir.1987)) (per curiam) (citing *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). Where a formal employment contract does not exist, the Eleventh Circuit and the Alabama Supreme Court have both indicated that a contract for continued employment may be implied from a personnel policy manual.

> [A] personnel policy manual issued by the employer may provide the employee an independent basis for a property interest in his continued employment. The Alabama Supreme Court, in *Hoffman–La-Roche, Inc. v. Campbell,* expressly recognized that a policy contained in an employee manual issued to an employee may become a binding contract once it is accepted by the employee through his continuing to work when he is not required to do so. If such a contract is determined to exist, it may provide the employee with an expectation of continued employment by restricting the employer's ability to exercise his powers to terminate the employment relationship. Such a contractual relationship may provide the employee with a property interest sufficient to require his employer to give him a hearing when the employment relationship is terminated.

*Lassiter v. Covington,* 861 F.2d 680, 684 (11th Cir.1988) (citing *Hoffman–LaRoche, Inc. v. Campbell,* 512 So.2d 725, 733 (Ala. 1987)). *Hoffman–LaRoche* established a three-prong test to determine whether a policy contained in an employee handbook is sufficient to create a contract. The language in the handbook must be specific enough to constitute an offer, the handbook must have been issued to the employee, and the employee must have accepted the offer by retaining employment after having been issued the handbook. A determination as to whether the handbook creates a contract is a matter of law; however, "the facts underlying that legal conclusion may be in dispute, thus requiring resolution by the factfinder." *Lassiter,* 861 F.2d at 684.

█ In her complaint, Anderson–Free indicates that she received a faculty handbook. In her response to defendants' motion to dismiss, Anderson–Free elaborates on the handbook, declaring that the handbook provides procedures for the renewal or nonrenewal of contracts for probationary faculty employees as well as a procedure for challenging the nonrenewal before the faculty grievance committee. None of the parties, however, provide the court with a copy of the handbook or the *specific language* which would allow the court to make a determination as a matter of law that the procedures either do or do not establish an implied contract. Nevertheless, the very existence of procedures governing the renewal or nonrenewal of contracts could be construed as limiting ASU's ability to terminate year-to-year employees. Construing all inferences in favor of the plaintiff, as the court is obligated to do when considering a motion to dismiss, the court finds that plaintiff has established a property interest sufficient to survive defendants' motion to dismiss.[7]

█ Once the plaintiff has established a property interest requiring due process, the court must then determine what process

---

7. Defendants argue that there is nothing in the handbook that constrains the President in his review of the grievance committee's decision, and, therefore, the handbook is not sufficient to create a contract. The court reminds defendants that the personnel manual in *Lassiter* also required the President of the University to review the discharge review committee's decision, just as the ASU President must review the faculty grievance committee's decision. And just as ASU's handbook does not appear to constrain the president's decision, neither did the *Lassiter* manual, which provided in relevant part that "[a]fter considering the findings and recommendations of the Committee, the President may reject the recommendation for discharge, authorize discharge, or take other appropriate action." 28 F.3d at 1152. That language notwithstanding, the *Lassiter* court was unwilling to find as a matter of law that the personnel manual did not create a contract. 861 F.2d at 684. By making this observation, the court does not mean to imply that all the terms of the *Lassiter* manual are similar to or analogous to ASU's handbook, but rather that the fact that the ASU president does not appear to be constrained in his acceptance or rejection of the faculty grievance committee's recommendation is not necessarily dispositive of the contract-from-personnel-manual theory.

is due. Anderson–Free claims that she was subjected to biased decisionmakers, and, therefore, that she was not afforded the process to which she was entitled. *See* ¶¶ 33, 44, 45. "It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir.1994). When a plaintiff complains that she was denied an impartial decisionmaker, she "must show actual bias on the part of the decisionmaker such that the decisionmaker is incapable of judging the dispute fairly. This bias may be personal or official. Official bias exists where there is a conflict of interest between the parties. Personal bias exists when the decisionmaker may harbor personal animosity toward the plaintiff." *Suber v. Bulloch County Bd. of Educ.*, 722 F.Supp. 736, 740 (S.D.Ga.1989).

 Anderson–Free specifically alleges that Hager, Steptoe and Baker were all biased against her. First, the court finds that Anderson–Free does not have a due process claim against Hager and Steptoe, who made the initial decision not to renew Anderson–Free's contract. "[A]n employee's right to employment may be abridged as long as the procedures used to abrogate that right satisfy constitutional minima." *McKinney*, 20 F.3d at 1561. Basically, due process requires notice and an opportunity to be heard; ASU attempted to satisfy due process requirements by providing Anderson–Free with notice that her contract had not been renewed, allowing her an opportunity to complain to the faculty grievance committee, and appointing the President of ASU as a final impartial decisionmaker. It was Hagar and Steptoe's initial termination decision that triggered Anderson–Free's right to due process in the first place, not Hager and Steptoe who later denied her due process. Accordingly, the court finds that Anderson–Free fails to state a claim against Hager and Steptoe in Count I of her complaint and that

they are therefore due to be dismissed from Count I.

 Anderson-Free's claim of bias lies not with Hager and Steptoe but instead with Baker, who was obligated to serve as an impartial decisionmaker and review the decision of the faculty grievance committee. But while Anderson–Free levels a conclusory allegation that Baker was biased, she fails to explain the basis for Baker's bias. There is certainly an inference in the complaint that Baker may have been biased against Anderson–Free due to her husband's public attacks on ASU's administration and, by implication, Baker. There is also an inference that Baker may have been biased because of Anderson–Free's activity in the union or Free's activity in the union or because of Anderson–Free's refusal to participate in the grade change. Accordingly, the court finds that in order to comply with Rule 8 of the Federal Rules of Civil Procedure and provide defendants with suitable notice as to Anderson–Free's theories of bias, she must file a more definite statement of her due process claim within 10 days from the issuance of this order.[8]

## C. Invasion of Marital Privacy

 Count II of plaintiffs' complaint alleges that defendants, presumably in both their official and individual capacities, deprived Anderson–Free of her constitutionally protected fundamental right of privacy in marital affairs, thereby violating Anderson–Free's substantive due process rights as guaranteed by the Fourteenth Amendment. The right to marital privacy was first recognized by the United States Supreme Court in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In his concurring opinion in *Griswold*, Justice White stated that the right of marital privacy found in the penumbras of the Bill of Rights is a right to be free of regulation of the intimacies of the marriage relationship. *Id.* at 502–03, 85 S.Ct. at 1691–92. Anderson–Free does not make it clear in her complaint on what she bases her allegations that the

**8.** As no discovery has been conducted in this matter and the discovery period is currently stayed, the court finds that defendants will not be prejudiced by this late clarification of plaintiffs' complaint.

defendants have intruded upon the intimacy of her marriage. The court suspects that Anderson–Free's invasion of marital privacy claim is actually encompassed in her freedom of intimate association claims discussed below. Consequently, the court finds that Count II of the complaint is due to be dismissed.

### D. Freedom of Association

 In Count III of her complaint, Anderson–Free alleges that adverse employment actions taken by defendants, presumably in both their official and individual capacities, violated her right to free association, as guaranteed by the First and Fourteenth Amendments. Although there is no explicit right of association found in the First Amendment, the Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Parks v. City of Warner Robins*, 43 F.3d 609, 615 (11th Cir.1995) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984)). To this end, there are two different kinds of association: intimate association and expressive association. *See McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir.1994).

 "[A] plaintiff ... can obtain special protection for an asserted associational right if she can demonstrate either that the asserted association closely enough resembles a family relationship to be protected by the right to intimate association, or that the purpose of the association is to engage in activities independently protected by the First Amendment." *Id.* at 1563. "[A] single association [however] may possess both intimate and expressive features and therefore fall within the scope of not only the right of intimate association but also the right to expressive association." *Id.* Anderson–Free appears to allege violations of both her intimate and expressive associational rights— i.e., that defendants have infringed upon her right of intimate association with her husband and that defendants have burdened her right to associate with her husband for First Amendment activities. *See* Pls.' Br. 8–9.

 "The law in this circuit, as expressed in *Hatcher v. Board of Public Education and Orphanage*, 809 F.2d 1546 (11th Cir.1987), makes clear that a public employee is shielded from retaliation by [her] employer on the basis of the employee's associational activity whether or not such activities relate to a matter of public concern." *Green v. City of Montgomery*, 792 F.Supp. 1238, 1252 (M.D.Ala.1992). The right to intimate association is "a fundamental aspect of personal liberty" which provides individuals with "the freedom to choose to enter into and maintain certain intimate human relationships." *Id.* Marriage, for example, is a constitutionally protected intimate association. *Roberts*, 468 U.S. at 619, 104 S.Ct. at 3250. For Anderson–Free to establish that an employment action has infringed upon her right to intimate association, she "must demonstrate that [ ] she has suffered some sort of adverse employment action for exercising the right." *McCabe*, 12 F.3d at 1563. Clearly, Anderson–Free's non-renewal constitutes an adverse employment action.

 In addition to alleging an adverse employment action, however, Anderson–Free must also allege that she suffered the adversity *because* she exercised her right to be married or to stay married to Free. That is, she must demonstrate that her intimate associational activity was a substantial or motivating factor in the decision not to renew her contract. *Green*, 792 F.Supp. at 1252. Citing her consistently above-average performance evaluations, the grievance committee's recommendation, and her husband's vocal criticisms of both ASU and its School of Music, Anderson–Free alleges that her non-renewal was an attempt by defendants to "punish her association" with Free. Compl. ¶ 46, 48–49. Defendants argue that Anderson–Free's allegations are "conclusory" and insufficient to meet the heightened specificity standard articulated in *Oladeinde*. *See* 963 F.2d 1481. Mindful however that the record remains largely undeveloped at this stage in the proceedings, the court finds that Anderson–Free has stated her intimate association claim with sufficient factual detail,

which if taken as true, creates at least an inference that defendants interfered with Anderson–Free's intimate association rights.

 The First Amendment not only protects the freedom of individuals to associate "for the purely private purpose of forming and preserving personal and social relationships," but also "as a collective means of engaging in political expression, religious worship, or other activities independently protected by the Constitution." *Green,* 792 F.Supp. at 1252. In this instance, Anderson–Free claims that her freedom of expressive association was violated by the defendants when they refused to allow Anderson–Free to bring a union representative, i.e., her husband, to the grade-change hearing conducted on May 7, 1993. First, the court notes that Anderson–Free has failed to make it clear in her complaint that she is attempting to bring an association claim based on the grade-change hearing; therefore, she has failed to meet the heightened pleading standards of *Oladeinde.* Second, and perhaps more significantly, such a claim would be barred by the applicable statute of limitations as the grade-change hearing occurred prior to May 12, 1993.

 Stating in her response brief that her union activities were a substantial motivating factor in the decision to nonrenew her employment contract, Anderson–Free also appears to be alleging that her associational rights were violated when her contract was not renewed due to her activity in the teacher's union as well as her husband's activity in the teacher's union. *See* Pls.' Br. at 9–10. Although Anderson–Free's amended complaint establishes that Anderson–Free helped to establish the teacher's union and that she, along with her husband, was active in the union, she has failed to allege anywhere but in her brief that she brings an association claim based on her or her husband's union activities. Consequently, the court finds that Anderson–Free has failed to comply with the applicable heightened pleading requirement and that she has failed to state a claim for deprivation of expressive associational rights. Accordingly, the court finds that Anderson–Free's claim that defendants infringed upon her expressive associational rights is due to be dismissed.

 The court must now turn to defendants' arguments that they are protected from Anderson–Free's association claims by the doctrine of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Rich v. Dollar,* 841 F.2d 1558, 1562 (11th Cir.1988). Defendants contend that Anderson–Free's "allegations do not fall within the ambit of recognized association rights" and, therefore, that Anderson–Free has failed to show that defendants' conduct violated clearly established law. Defs.' Mot. to Dismiss. Am. Compl. at 14–15.

 The relevant inquiry in qualified immunity analysis is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994), and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter,* 28 F.3d at 1150; *see also Cofield v. Randolph County Commission,* 90 F.3d 468, 470 (11th Cir. 1996). As emphasized in *Lassiter,* "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.; see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The Eleventh Circuit has warned that plaintiffs must not be permitted "to discharge their burden by referring to general rules and to the violation of abstract 'rights.' " *Id.* at 1150. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Post v. City of*

*Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir. 1994)).

 Although it is true that at the time Anderson–Free's cause of action arose, the Eleventh Circuit had not yet determined the standard of review for intimate association claims, *see McCabe,* 12 F.3d at 1564–69 (noting three possible standards—Pickering, Elrod–Branti, and strict scrutiny),[9] the Supreme Court and the Eleventh Circuit had nevertheless recognized the right to intimate association. *See Roberts,* 468 U.S. at 619–20, 104 S.Ct. at 3250–51 (recognizing that the personal affiliations "that attend the creation and sustenance of a family—marriage ..." and the freedom to choose to enter into and maintain certain intimate human relationships is protected from undue governmental intrusion as a fundamental aspect of personal liberty); *Hatcher,* 809 F.2d at 1558 ("Indeed, even a public employee's association choices as to whom to date enjoy constitutional protection."). Clearly, Anderson–Free's claim that her contract was not renewed due to her association with her husband is within the ambit of recognized associational rights.

Despite the fact that the right to intimate association was a recognized right at the time of the events at issue, Anderson–Free has not pointed to a controlling case with materially similar facts that would allow her to avoid defendants' qualified immunity claim. Anderson–Free attempts to meet her burden of locating clearly established law by citing to *Hatcher.* In *Hatcher,* a former school principal contended that she had been demoted from her position as principal and denied a comparable position because she had attended meetings protesting school closings and because she had attempted to bring her minister and a school board member to a meeting with the school superintendent and his assistant. 809 F.2d at 1557–58. The court in

*Hatcher* concluded that these actions were constitutionally protected associational activities and that genuine issues of material fact remained as to whether the principal's associational activity was a substantial or motivating factor in the superintendent's decision to deny the principal a comparable position. *Id.*

Anderson–Free argues that "due to the similarity between the facts in [her] case and those of Hatcher, defendants cannot rely on qualified immunity as a defense." Pls.' Br. at 10. The court is unpersuaded by Anderson–Free's argument. Although *Hatcher* certainly would have supported Anderson–Free's expressive association claim, had it survived this motion to dismiss, *Hatcher* does not focus on the deprivation of intimate associational rights nor is it factually similar to Anderson–Free's claims of deprivation of intimate associational rights. Accordingly, the court finds that Anderson–Free's intimate association claim against the defendants in their individual capacities is due to be dismissed. Anderson–Free's intimate association claim against the defendants in their official capacities remain.[10]

### E. First Amendment Claim

In Count IV of the complaint, plaintiff Free alleges that defendants, presumably in both their official and individual capacities, infringed upon his right of free speech, guaranteed to him under the First and Fourteenth Amendments to the United States Constitution. Specifically, Free alleges that defendants elected not to renew Anderson–Free's contract in retaliation for Free's exercise of his free speech rights. Compl. ¶ 47. Free contends that defendants' actions were deliberately intended to and did cause him economic harm in that he suffered a loss of family income. Compl. ¶ 47; Pls.' Br. at 14.

**9.** Since Anderson–Free's cause of action arose, the Eleventh Circuit Court of Appeals has suggested in a now vacated opinion that strict scrutiny is the correct standard of review for intimate association claims. *See Shahar v. Bowers,* 70 F.3d 1218, 1224 (11th Cir.1995), *vacated,* 78 F.3d 499 (1996).

**10.** The court reminds the parties that because Anderson–Free's intimate association claim survives only against the defendants in their official capacities, she is entitled only to prospective injunctive relief. *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (holding that when a state official in sued in his or her official capacity for injunctive relief, the official is a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the state").

In response, defendants argue first that Free lacks standing to bring a claim of deprivation of free speech rights and second that even if Free has standing to bring such a claim, he has failed to show that his speech or activities were a matter of public concern deserving of constitutional protection. Finally, defendants argue that they are protected by the doctrine of qualified immunity.

 Defendants challenge Free's standing, arguing that "Free cannot obtain the requisite constitutional standing by attempting to assert a claim based on the alleged violation of rights of a third party." Defs.' Br. at 14. The court notes, however, that Free does not bring a claim based on the rights of his spouse, but rather he brings a claim based on his own rights to exercise free speech without fear of reprisal against himself or his family.[11] Such a claim will not in and of itself prevent Free from having standing; "[w]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (internal quotations omitted).

 To meet the irreducible minimum constitutional requirements of standing, Free must show the following: (1) that he has suffered an injury in fact, which is concrete and particularized; (2) that there is a causal connection between the injury and the conduct of which Free complains; and (3) that the injury is likely to be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. at 2136–37. Free has made the requisite showing. He alleges that defendants harmed his family income by electing not to renew his wife's teaching contract and that this harm was inflicted on Free in retaliation for his public criticism of ASU and the School of Music. Free alleges that he and his family derived part of their support from Anderson–Free's income and that he has been concrete-

ly injured by the loss of that income. Free has demonstrated that there is a causal connection between defendants' allegedly wrong actions and his injury and that his alleged harms would be redressed by the relief he has requested in his complaint. Accordingly, the court finds that Free has standing to pursue his First Amendment free speech claim against defendants.

 "[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection." *Id.* at 141, 103 S.Ct. at 1686. That protection, however, is limited by the state's need to preserve efficient governmental functions. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir.1989). Judicial scrutiny of a claim by a public employee alleging punishment for the exercise of free speech rights involves a four-step analysis. *See Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). First, the employee must demonstrate that the expression addresses a matter of "public concern." *Id.* at 384–85, 107 S.Ct. at 2897. Second, the employee must demonstrate that the expression was a substantial or motivating factor in the employment decision. *Id.* Third, the state must attempt to justify the discharge on legitimate grounds and the court must balance the state's interest as an employer against the employee's interest in commenting upon matters of public concern. *Id.* at 388, 107 S.Ct. at 2899. Finally, provided the court has determined that the employee's interest outweighs that of the state, the state may still avoid liability by demonstrating that it would have reached the same adverse decision with respect to the employee's job even in the absence of protected speech. *See Hatcher*, 809 F.2d at 1556 (citing *Mt. Healthy City School Dist. Bd. of Educ. v.*

---

**11.** Free and Anderson–Free seek to vindicate their individual rights, but they allege the same damage, i.e., loss of income. The court finds this damage to be sufficient to establish standing for both Free and Anderson–Free, but the court also

reminds the plaintiffs that they are not both entitled to recover compensatory damages in the form of Anderson–Free's lost salary. Otherwise, plaintiffs would be claiming a "double recovery."

*Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The court finds that Free has made sufficient allegations in his complaint to state a claim for infringement of his free speech rights.

■■■■■ Free alleges that defendants infringed on his right to speak on public issues, but defendants argue that Free has failed to show that his speech constituted a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. The status of Free's speech is a question of law. *Id.* at 150 n. 10, 103 S.Ct. at 1692 n. 10. Free alleges that he vocally and openly criticized ASU's policies and actions and that he sent a memorandum to Hager and Steptoe expressing his disapproval of the policies and administration of the School of Music. Specifically, Free criticized Hager's management of the department and the administration's position on the grade-changing incident occurring on or about May 7, 1993. Free contends that these criticisms questioned matters of political and social concern within the University as well as within the community.

■■■■■ "Speech by members of an academic community, even when critical in nature, should not be easily denied constitutional protection." *Maples v. Martin,* 858 F.2d 1546, 1553 (11th Cir.1988). "[T]eachers whose speech directly affects the public's perception of the quality of education in a given academic system find their speech protected." *Id.* at 1553 (citing *Pickering,* 391 U.S. at 571, 88 S.Ct. at 1736). On the other hand, "speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." *Id.,* 858 F.2d 1546, 1552 (11th Cir.1988). For example, criticism regarding salary levels, court assignments, course syllabus, and tenure decisions are "matters relating to internal college affairs rather than to

matters of political or social import—matters of public concern." *Id.* (quoting *Ballard v. Blount,* 581 F.Supp. 160 (N.D.Ga.1983), *aff'd,* 734 F.2d 1480 (11th Cir.1984)). Without having the memorandum or other evidentiary material in the record, the court must conclude at this stage of the proceedings that Free makes sufficient factual allegations to demonstrate his speech was deserving of protection. Although much of his criticism could be construed as speech about internal administrative matters, Free also appears to be questioning, at least in part, the educational standards of ASU and its School of Music. This is a matter of public concern. *See Johnson v. Lincoln Univ.,* 776 F.2d 443 (3rd Cir.1985) (educational standards and accreditation are matters of public concern); *see also Maples,* 858 F.2d at 1553 (determining that issues such as poor student performance and preparation of students for careers touches upon matters of public concern).

■■■ Free argues that it was clearly established at the time of the events forming the basis of this action that defendants could not legally take action in the manner in which they did, and, consequently, defendants are not entitled to a defense of qualified immunity. The court finds otherwise. As stated previously, the doctrine of qualified immunity is a case-specific inquiry. In order for the plaintiff to sidestep this defense, plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on materially similar facts. *Lassiter,* 28 F.3d at 1150. In the instant action, Free has failed to point to any case whatsoever that permits an individual to bring a free speech claim based on retaliation directed towards that individual's spouse. Accordingly, this court must dismiss Free's free speech claim against the defendants in their individual capacities. Free's free speech claim against the defendants in their official capacities remain.[12]

## CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that defendants' mo-

---

12. The court reminds the parties that because Free's free speech claim survives only against the defendants in their official capacities, he is entitled only to prospective injunctive relief. *See Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (holding that when a state official in sued in his or her official capacity for injunctive relief, the official is a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the state").

tion to dismiss be and the same is hereby GRANTED in part and DENIED in part, to wit:

(1) Plaintiff Anderson–Free's due process claim against defendants Hager and Steptoe is hereby DISMISSED;

(2) Plaintiff Anderson–Free's claim of invasion of marital privacy is hereby DISMISSED;

(3) Plaintiff Anderson–Free's claim of deprivation of expressive associational rights is hereby DISMISSED;

(4) Plaintiff Anderson–Free's claim of deprivation of intimate associational rights against defendants in their individual capacities is hereby DISMISSED; and

(5) Plaintiff Free's claim of deprivation of free speech against defendants in their individual capacities is hereby DISMISSED.

It is further CONSIDERED and ORDERED that Plaintiff Anderson–Free be and same is hereby DIRECTED to file a more specific statement of her due process claim within 10 days from the issuance of this order.

It is further CONSIDERED and ORDERED that defendants' motion to dismiss filed June 14, 1995, be and the same is hereby DENIED as MOOT.